E-FILED

Tuesday, 19 September, 2006  04:38:21 PM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| RICKEY B. DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  04-3168 |
| | ) | |
| CITY OF SPRINGFIELD, ILLINOIS, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>OPINION</u>

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Defendant City of Springfield, Illinois' (City) Motion for Summary Judgment (d/e 66) (Motion for Summary Judgment), Motion to Strike Affidavit (d/e 70), and Motion to Strike Exhibits (d/e 74).  Davis is an African American man.  He is a Lieutenant in the City's Police Department (Department).  In October 2003, he applied for a promotion to Deputy Chief of the Department's Criminal Investigations Division (Position).  Police Chief Donald Kliment selected Police Lieutenant William Rouse, a Caucasian man, for the Position.  Davis claims that Kliment rejected him for the Position because he is an African American and to retaliate against him for speaking out

1

about racial issues within the Department.

Davis has advanced four theories to support his claim that he was discriminated against when he was not promoted to the Position within the Police Department.  Davis brings his claims against the City under two theories of Title VII of the Civil Rights Act of 1964 (Title VII) (Count I), and §§ 1981 and 1983 (Count II).  42 U.S.C. §§ 1981, 1983, and 2000e <u>et seq.</u>  Title VII prohibits employment discrimination and retaliation against employees who oppose employment discrimination.  42 U.S.C. §§ 2000e-2, 2000e-3.  Section 1981 prohibits racial discrimination in contracting, including employment relationships.  42 U.S.C. § 1981.  Section 1983 authorizes suits against government officials and municipalities that violate an individual's federal statutory or constitutional rights.  42 U.S.C. § 1983.

Davis has presented sufficient evidence to defeat the City's Motion for Summary Judgment on each of the Title VII claims in Count I, but not on the §§ 1981 and 1983 claims in Count II.  The City's Motion for Summary Judgment is, therefore, allowed as to Count II and denied as to Count I.  The City also asks the Court to strike Davis' Affidavit and other evidence submitted by Davis.  The Motion to Strike Davis' Affidavit (d/e 70) and Motion to Strike Davis' Exhibits (d/e 74) are allowed in part and denied in

part, as outlined below.

I.     MOTIONS TO STRIKE

The City asks the Court to strike Davis' Affidavit because it contains hearsay, assertions not based on personal knowledge and inappropriate legal conclusions.  Davis argues that the Affidavit is admissible.  An affidavit submitted in opposition to a motion for summary judgment must be based on personal knowledge and the averments must be otherwise admissible. Fed.R.Civ.P. 56(e).  The Court has reviewed the Affidavit.  Memorandum of Plaintiff in Opposition to Motion for Summary Judgment (d/e 68) (Davis Memorandum), Davis Exhibit 36, Affidavit of Rickey B. Davis (Davis Affidavit).[1]  Some of the statements in the Davis Affidavit lack foundation to establish that the statements are based on personal knowledge.  The Court will disregard any portions of the Davis Affidavit that lack such foundation.  The Court will also disregard any portions of the Davis Affidavit that consist of inadmissible hearsay or are otherwise not competent evidence.  The Motion to Strike the Davis Affidavit is, thus, allowed in part.

_____

[1]The exhibits submitted by Davis in support of his Memorandum (d/e 68) are hereinafter referred to as "Davis Exhibit".

The City also asks the Court to strike a number of exhibits submitted by Davis in opposition to the Motion.  Again, all exhibits must be competent, admissible evidence to be considered by the Court in connection with the pending Motion.  Fed.R.Civ.P. 56(e).  The evidence must also have been properly disclosed in discovery.  Fed.R.Civ.P. 26 & 37.  The City is correct that many of the exhibits either were not properly disclosed or are not competent, admissible evidence.

Davis Exhibit 1 is a report written by Lawrence C. Golden dated November 24, 1986.  Davis offers no foundation to establish the document's authenticity and no evidence to establish that the report is admissible under any exception to the hearsay rule.  Fed.R.Evid. 802 & 901.  The Court will disregard Davis Exhibit 1.

Davis Exhibits 22, 29, 31 and 41 are newspaper articles.  The City argues that they are inadmissible hearsay.  Davis responds that newspaper articles are self-authenticating and that the City submitted a number of news articles in support of the Motion.  Newspaper articles are self-authenticating.  Fed.R.Evid. 901.  Authentic hearsay, however, is still hearsay.  Fed.R.Evid. 802.  No author of any article has stated under oath that the statements in any of the submitted articles are true and based on

personal knowledge.  Fed.R.Civ.P. 56(e).  The Court will disregard all of the news articles submitted by both parties.

Davis Exhibits 7 and 8 are summaries of employment data.  The City objected because Davis has provided no foundation for these summaries.  Davis responded with an Affidavit from Anniethabatha Bond, the person who prepared the summaries.  Response to Motion to Strike Exhibits (d/e 82) (Response to Motion to Strike), attached Affidavit of Anniethabatha M. Bond.  Bond's Affidavit includes copies of the documents summarized.  Summaries of voluminous data are admissible, but the party proposing to use summaries must give the other side an opportunity to inspect the data on which the summaries are based.  Fed.R.Evid. 1006; Fidelity Nat. Title Ins. Co. Of New York v. Intercounty Nat. Title Ins. Co., 412 F.3d 745, 753 (7th Cir. 2005).  Davis submitted the summaries without informing the City of the data used.  Davis did not provide the City with the Bond Affidavit until after the City filed this Motion to Strike and then only shortly before the City was obligated to file its Reply.  See Text Order entered August 15, 2006.  In this context, Davis did not provide the City with a reasonable amount of time to inspect the data and respond to these summaries.  The Court therefore will not consider Davis Exhibits 7 and 8.  Fed.R.Evid. 1006.

Davis Exhibit 38 is a letter from the City's Corporation Counsel Jenifer Johnson to attorney David Rose. The letter is on an official letterhead and is signed by Johnson. The City does not dispute the letter's authenticity and does not claim that the letter was not properly disclosed in discovery. The letter also is an admission of a party opponent and so is not hearsay. <u>Fed.R.Evid.</u> 801(d)(2)(D). The City only objects that Johnson and Rose were not disclosed as persons that Davis may use as witnesses. <u>Fed.R.Civ.P.</u> 26(a). Since the City does not dispute authenticity, Davis does not need to use either of these individuals as witnesses. The letter is also otherwise admissible. Furthermore, the City is not prejudiced by Davis' use of the letter or by Davis' failure to list a foundation witness in his Rule 26 disclosures. The Court will not strike the letter.

The City also objects to transcripts of depositions of Letitia Dewith-Anderson, Todd Renfrow, Frank McNeil, Frank Edwards, and Sandy Robinson. <u>Davis Exhibits 3, 4, 6, 9, 13, and 15</u>. The City objects because: (1) Davis did not disclose in his Rule 26 disclosures that he may use any of these individuals as witnesses, and (2) their depositions were not taken in this case. <u>See Motion to Strike Exhibits,</u> attached exhibit <u>Plaintiff's Rule 26 disclosures</u>. These depositions were taken in a separate case in which both

Davis and the City are parties.  <u>Davis v. Harris</u>, Case No. 03-3007.  The <u>Davis v. Harris</u> case currently has six plaintiffs, including Davis, and two defendants, including the City.  The plaintiffs in <u>Davis v. Harris</u> allege acts of racial employment discrimination and retaliation that occurred in 2002 and before.

Davis responds that the parties agreed in a telephone conference with U.S. Magistrate Judge Byron G. Cudmore that depositions taken in this case or in Case No. 03-3007 could be used interchangeably.  A Text Order entered by Judge Cudmore on March 6, 2006, in Case No. 03-3007, states that additional depositions in Case No. 03-3007 can be conducted during depositions taken in this case.  Taking one deposition of an individual who may be a witness in both cases, or who may have discoverable information in both cases, may often be a good idea.  All concerned save time by taking the deposition once instead of twice.  The Text Order by Judge Cudmore reflects this.  Thus, the Court finds no prejudice to the City from the fact that the depositions were taken in Case No. 03-3007.

The problem is that Davis did not disclose that he may use these individuals as witnesses in this case.  He was obligated to do so. <u>Fed.R.Civ.P.</u> 26(a)(1)(A).  Davis may not use these depositions to oppose

the Motion for Summary Judgment unless his failure to disclose these individuals was harmless.  Fed.R.Civ.P. 37(c)(1).  The potential for harm in this case is real.  The Davis v. Harris case has six plaintiffs, including Davis, who allege acts of discrimination and retaliation that occurred in 2002 and before.  In this case, Davis alleges discrimination and retaliation based on one promotion decision in 2003.  Davis should have alerted the City in his Rule 26 disclosures of those individuals who may be witnesses in this case. The City could then discover information about this case from those individuals.  There is no reason that the City would assume that every person who may be deposed in Case No. 03-3007 might also be a witness in this case or have discoverable information about this case.  Because Davis did not disclose that he may use Dewith-Anderson, Renfrow, McNeil, Edwards, and Robinson as witnesses in this case, the City was not on notice to ask these deponents questions about this case.  Given this lack of notice, the Court cannot say that Davis' failure to disclose these witnesses was harmless.  The Court, therefore, will not consider these depositions. Fed.R.Civ.P. 37(c)(1).

Davis also notes that the City used the deposition of Patrick D. Fogelman, taken in Case. No. 03-3007, to support its Motion for Summary

Judgment in this case.  Davis does not state whether the City disclosed Fogelman as a possible witness in its Rule 26 disclosures in this case.  The Court, therefore, will not strike his deposition just because it was taken in Case No. 03-3007.

II.    STATEMENT OF FACTS

Davis came to the Department as a patrolman in 1981.  He was promoted to Sergeant in 1994 and later to the rank of Lieutenant.  In 2003, he had six years of experience as a detective, two years of experience as a Detective Sergeant, and more than one year of experience as a Lieutenant in the Criminal Investigations Division.  He also received the William Herndon Award for outstanding detective work.  See Reply to Response to Motion for Summary Judgment (d/e 85) (Reply), Exhibit 3, Charge of Discrimination, ¶¶ 6-8; Complaint (d/e 1), ¶¶ 11-12 and Answer (d/e 12), ¶¶ 11-12.

Throughout much of his career, Davis has spoken out about racial issues within the Department and the City.  He became a leader in a group that advocated for the interests of African American police officers.  The group ultimately became known as the Black Guardians Association of Central Illinois.  See e.g., Davis Exhibit 19, The Black Guardians

Association of Central Illinois Proposal for Recruiting dated May 5, 2004.

In 1994, Davis and three other African American officers were ranked among the top twenty applicants for promotion to the rank of Sergeant. Davis states that the City intended to promote all twenty.  Some Aldermen and the Police Union wanted only eight of the applicants promoted to the rank of Sergeant; Davis spoke against this proposal.  Kliment was head of the Union at the time.  The City promoted the top twenty applicants, including Davis and the other three African American officers, to the rank of Sergeant.  Davis Exhibit 20, Deposition of Rickey Davis dated June 15, 2005 at 45-47.

In 1999, Davis filed a complaint with the Illinois Department of Human Rights (IDHR) because then Department Chief John Harris had given a few Caucasian officers assistance in studying for the lieutenant's examination.  Defendants' Motion for Summary Judgment, Exhibit 8, IDHR Investigation Report dated March 30, 2000.  The IDHR Investigation Report found a lack of substantial evidence to indicate that Chief Harris' actions were racially motivated.  Id. at § VII. E.  The Report found that a majority of the Caucasian applicants, as well as all four African American applicants, did not receive any assistance from Chief Harris.  Also,

the test was postponed to give all applicants additional time to study for the test. Id.

In 2002, Davis and several other officers filed charges of discrimination and retaliation against the City with the Equal Employment Opportunity Commission (EEOC). Davis and the others then filed suit against the City and others in this Court. Davis v. Harris, Case No. 03-3007. The case is still pending.

Kliment became Chief of the Department in June 2003. Kliment had been the head of the Police Union for several years. He had also been Davis' partner and friend in the 1980's. Kliment still considers himself a friend of Davis. Reply to Response to Motion for Summary Judgment (Reply (d/e 85), attached Deposition of Donald Kliment dated June 16, 2005 at 94-95. Davis perceived a wall between himself and Kliment. Kliment often took positions on behalf of the Union that were adverse to positions that Davis took on behalf of the Black Guardians Association. Davis Exhibit 24, Deposition of Rickey Davis dated February 24, 2006 at 133. Davis, however, supported Kliment's selection as Chief. Id. at 133.

After becoming Chief, Kliment decided to reorganize the Department. The Department had a Police Chief and five Assistant Chiefs. Kliment

11

decided to reorganize the Department's upper management. The Department had one Chief and five Assistant Chiefs. Kliment decided to have a Chief, one Assistant Chief, and four Deputy Chiefs, including the Position. See Reply, Exhibit 1, Department Organizational Chart. Davis was a Lieutenant in the Department. He applied for the Position. William Rouse, a Caucasian Lieutenant with the Department also applied to be a Deputy Chief. Rouse indicated that he preferred to be appointed to one of the other three Deputy Chief positions, but he would take any of the positions. Davis Exhibit 44 (d/e 78), email from Rouse dated September 17, 2003.

In early October 2003, the Department's Sergeant promotion list was about to expire. The Department periodically generated a list of officers qualified for promotion to the rank of Sergeant. Qualified officers applied for placement on the list. The process included an examination. The resulting list contained the qualified applicants in rank order. As openings occurred, officers at the top of the list were promoted to Sergeant, and the remaining applicants on the list would move up in rank order. The list was effective for a stated period of time. After the list expired, eligible officers could again apply and a new list would be generated. See Motion for

<u>Summary Judgment</u>, Exhibit 4, <u>Rules of the Springfield Civil Service Commission, § V, Eligibility Lists for Police and Fire Departments</u>.

In this case, the Sergeant list was set to expire in early October 2003. The name of an African American officer, Ralph Harris, had moved close to the top of the list. If the list expired as originally planned, then Harris would need to start all over. If the list were extended, then Harris would probably be promoted to the rank of Sergeant because of vacancies that were anticipated in the next year. The City's Civil Service Commission (Commission) had the authority to extend the list for one year. <u>Id.</u>, <u>Rule 5.5(C)</u>. The Department had no African American Sergeants at that time. Davis, Harris and others asked that the Sergeant list be extended so Harris could be promoted. In December 2003, the Commission agreed and extended the list for one year retroactively to October 2003. Harris was promoted to the rank of Sergeant on October 1, 2004. <u>Davis Exhibit 38</u>, <u>Johnson Letter to Rose</u> at 2-3.

Kliment was not in favor of extending the Sergeant list. He appeared before the Commission to recommend against extending the list. He told the Commission that starting the process to create a new eligibility list would allow fifteen minority officers the opportunity to apply for the rank

of Sergeant.  Kliment told the Commission that this would allow for greater diversity in the ranks of the Department's sergeants.  <u>Reply</u>, Exhibit 21, <u>Affidavit of Henry Harms</u>.

In early October 2003, Kliment had a conversation with Davis.  Davis states that he asked Kliment to support extending the Sergeant list.  Davis states that Kliment refused.  According to Davis, Kliment said that the Union would have his head if he supported the extension.  Davis states that when he continued to press Kliment about extending the list, Kliment said, "there's going to be some people very disappointed when I make promotions to Deputy Chief."  <u>Davis Affidavit</u>, ¶ 39.[2]  Kliment states that Davis is incorrect; he never made this statement.  <u>Reply</u>, Exhibit 6, <u>Affidavit of William Kliment</u>, ¶ 11.

In late October 2003, Kliment selected Rouse instead of Davis for the Position.  Kliment and the City have given the following reasons for Kliment's decision: (1) Rouse was not a member of the Criminal Investigations Division; (2) Rouse possessed strong managerial and

_____

[2]The City argues that this statement in Davis' Affidavit is inadmissible hearsay. The Court disagrees.  Kliment was Chief of Police.  He had the authority to make the promotions to Deputy Chief.  He, therefore, was speaking about a matter within the scope of his agency with the City as Police Chief, made during the existence of the agency.  The statement is, thus, an admission of a party opponent and not hearsay. <u>Fed.R.Evid.</u> 801(d)(2)(D).

supervisory skills; (3) Rouse exhibited strong leadership skills; (4) Rouse graduated from Indiana University with a BA degree; (5) Rouse was trustworthy, fair, and intelligent; (6) Rouse possessed good common sense; and (7) Rouse had the respect of other patrol officers and supervisory personnel.   <u>Motion for Summary Judgment</u>, Exhibit 1, <u>Response to Plaintiff's First Interrogatories</u>, ¶ 3, and attached <u>Deposition of Donald Kliment dated June 22, 2006</u> at 129-30.  Kliment stated that he wanted someone outside the Criminal Investigations Division because he wanted to overhaul the Division.  He said, "Detectives weren't communicating with each other.  There wasn't a lot of communication between the general investigation and the special investigations, and there were some morale issues with people feeling the major case officers were treated differently than other officers, things of that nature." <u>Deposition of William Kliment dated June 22, 2006</u> at 128.

Kliment selected one of the prior Assistant Chiefs, Ralph Caldwell, to fill the new Assistant Chief position.  He selected three of the prior Assistant Chiefs to fill the other Deputy Chief positions.  He selected Mike Geiger to be Deputy Chief of Field Operations.  He selected Jim Burton to be Deputy Chief of Administrative Services.  He selected Robert Williams to be Deputy

Chief of Professional Standards.   Williams is African American, and Caldwell, Geiger and Burton are Caucasian.  Williams, Geiger and Burton each had experience in at least one of the areas placed under their authority. Davis Exhibit 2, Deposition of William Kliment dated June 22, 2006 at 47; and Davis Exhibit 23 Deposition of Mike Geiger at 4-8.  With respect to Williams, at least, the transfer was just a change in title with some additional responsibilities.  Davis Exhibit 2, Deposition of William Kliment dated June 22, 2006 at 56-57.

Sergeant Tim Young and Detective Matt Madonia worked in the Criminal Investigations Division.  Each criticized Rouse for his actions as Deputy Chief of the Criminal Investigations Division.  Young, in particular, disputed whether Rouse had the qualities stated as the reasons for Rouse's selection for the Position.  See Davis Exhibit 10, Deposition of Tim Young; and Davis Exhibit 25, Deposition of Matt Madonia.

After Rouse became Deputy Chief, Davis states that Rouse and Kliment excluded Davis from many meetings in which he should have been included.  Davis Affidavit, ¶¶ 10-19, 22.  On March 7, 2006, Davis was transferred to the day shift of the Patrol Division.  Id., ¶ 20.  Davis remained a Lieutenant, but he considered the transfer a demotion because

the Patrol Division lacked the prestige of Criminal Investigations and because he had less responsibility in the Patrol Division.  Id.

On November 5, 2003, Davis filed a charge of discrimination with the EEOC.  Davis claimed that the selection of Rouse for the Position was both race discrimination and retaliation in violation of Title VII.  Reply, Exhibit 3, Charge of Discrimination.  On June 25, 2004, the EEOC gave Davis a right to sue letter.  Davis then brought this action.  Davis claims that Kliment selected Rouse over him because he is African American and to retaliate against him for speaking out about racial discrimination.

He also brings a claim against the City under §§ 1981 and 1983 for racial discrimination and retaliation based on Kliment's decision to select Rouse for the Position.  Davis claims that Kliment's action was part of a policy, custom or practice of racial discrimination and retaliation by the City.

Davis presents evidence that the City currently, and historically, has employed very few African Americans as police officers.  In 1981, the Department had a force of one hundred seventy officers, approximately twenty five of whom were African Americans.  Davis Exhibit 20, Deposition of Rickey Davis dated June 15, 2005 at 142-43.  The Department hired a

total of four African American officers in the 1980s.  Id. at 143-44.  In 1991, the City adopted an affirmative action plan to hire more African American officers.  Davis Exhibit 12, City Ordinance 997-12-91.  The plan set a goal of having an employee profile that reflected the minority and female workforce population.  Id. at 3.  In the mid-1990s, the Department had an African American Police Chief, Harvey Davis, the brother of Plaintiff Davis.  Davis Exhibit 26, Deposition of Robert Williams at 142.  Harvey Davis was Chief in 1994, when the four African American officers were promoted to sergeant.  Id.  Deputy Chief Williams indicated that he believed the Department, in 1994, had a racially hostile working environment.  Id.  By the late 1990's, the number of African American officers had fallen to nine.  Davis Exhibit 20, Deposition of Rickey Davis dated June 15, 2005 at 144-45.

In 2000, the NAACP filed a Title VII action in this Court against the City alleging racial discrimination in hiring in the Department and in the City's Fire Department.  NAACP v. City of Springfield, Case No. 00-3136.  The City and the NAACP settled the suit through the entry of a Consent Decree.  Davis Exhibit 11, Consent Decree entered September 5, 2001.  Under the Consent Decree, the City agreed to try to hire more African

American police officers so that the percentage of the total force reflected the percentage of African Americans in the Springfield labor force.  Id., ¶ 10.

Since the Consent Decree, the City has not appreciably increased the number of African American officers in the Department.  Davis Exhibit 2, Deposition of Donald Kliment dated June 20, 2006 at 25.  As of June 16, 2005, the City had twelve African American officers on a force of 272 officers.  Davis Exhibit 17, Deposition of Donald Kliment dated June 16, 2005 at 24.  Current Mayor Tim Davlin stated that the City's efforts to recruit minority officers have been a complete failure.  Davis Exhibit 9, Deposition of Timothy Davlin at 42-43.  Deputy Chief Robert Williams stated that the Department's Minority Recruitment Committee (Recruitment Committee) was in shambles.  Davis Exhibit 26, Deposition of Robert Williams at 122.  Kliment also states that the City's recruiting efforts have not increased the number of minority candidates.  Davis Exhibit 17, Deposition of Donald Kliment dated June 16, 2005 at 26, 35-36.

Davis and Ralph Harris were on the Recruitment Committee briefly.  Id. at 43.  They submitted a list of suggestions for improving minority recruitment.  Davis Exhibit 19, Proposal For Recruiting dated May 5, 2004.  They also suggested using a banding method in which all applicants ranked

19

within a range, or band, would be considered equally qualified for employment as officers. <u>Davis Exhibit 20</u>, <u>Deposition of Rickey Davis dated June 15, 2005</u> at 183. Davis states that some of their proposals were received in an argumentative and negative fashion. <u>Id.</u> at 186-87. The City, however, adopted the banding proposal. <u>Reply</u>, Exhibit 19, <u>Minutes of the Recruitment Committee on June1, 2004, and June 30, 2004</u>. Davlin removed Davis and Ralph Harris from the Recruitment Committee and replaced them with two other African American officers, Cleo Moore and Melody Holman. <u>Davlin Deposition</u> at 125. Davis, Ralph Harris, Moore and Holman are all plaintiffs in the <u>Davis v. Harris</u> case.

As additional evidence, Davis notes that in November 2002, then Mayor Karen Hasara stated in a public meeting of the City Council that she believed that there was racism in the Department. <u>Reply</u>, Exhibit 22, <u>Affidavit of Karen Hasara</u>. She later told Davis, Ralph Harris, and Don Ewing, another African American officer, that some of her white friends said that she was doing too much for black officers. <u>Davis Exhibit 43</u>, <u>Deposition of Ralph Harris</u> at 33. The City also agreed to provide the NAACP with semi-annual reports on compliance with the Consent Decree. Some of the reports were not sent in a timely manner. <u>Davis Exhibit 38</u>,

Johnson Letter dated May 12, 2005 at 1.  On August 24, 2005, Springfield Alderman Frank McNeil wrote representatives of the United States Department of Justice Civil Rights Division to request an investigation of the Department's hiring and promotion practices.  Davis Exhibit 5.

III.  ANALYSIS

The City now moves for summary judgment.  At summary judgment, the City must present evidence that demonstrates the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The Court must consider the evidence presented in the light most favorable to Davis.  Any doubt as to the existence of a genuine issue for trial must be resolved against the City.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Once the City has met its burden, Davis must present evidence to show that issues of fact remain with respect to an issue essential to his case, and on which he will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Davis alleges that he was not promoted to the Position because he is an African American and because the City was retaliating against him for speaking out on racial issues within the Department and the City.  Title VII

provides that "It shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ."  42 U.S.C. § 2000e-2(a)(1).  Title VII also protects employees from retaliation.  The act provides that "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter . . . ."  42 U.S.C. § 2000e-3(a).  An individual who believes that he has been discriminated or retaliated against is entitled to bring a charge before the EEOC and a law suit against his employer if the EEOC does not resolve the matter.  42 U.S.C. 2000e-5.  Davis argues that his employer, the City, both discriminated against him because he is African American and retaliated against him for opposing employment discrimination, by denying him the Position.

Section 1981 states that every person, "shall have the same right. . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ."  The section further provides that the term "make and enforce contracts" includes "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. §§ 1981 (a) &(b).  The section has

been interpreted to prohibit race discrimination in employment relationships.  See e.g., Scaife v. Cook County, 446 F.3d 735, 738-39 (7th Cir. 2006).  Individuals who believe that they have been discriminated against in a contractual relationship may bring an action in federal court.  See e.g., Jett v. Dallas Independent School Dist., 491 U.S. 701 (1989).

Section 1981 normally imposes liability on the individual who committed the discriminatory acts.  Jett, 491 U.S. at 731-32.  In this case, that would be Chief Kliment.  Davis, however, chose not to sue Kliment personally.  Rather, he brought the § 1981 action against the City.  To prevail on his claims against the City, Davis must not only prove that the denial of the promotion was due to racial discrimination or retaliation, but he must also prove that the City had so firmly entrenched the practice of racial discrimination and retaliation in promotions in the Police Department that the practice had become a policy, practice or custom of the City that had the force of law.  Smith v. Chicago School Reform Bd. of Trustees, 165 F.3d 1142, 1148 (7th Cir. 1999).

Section 1983 provides, "Every person who, under color of law, . . . subjects . . . any other person . . . to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in

23

an action at law . . . ."  In this case, Davis claims that Kliment discriminated against him by denying him the promotion because of his race.  Davis also claims that Kliment used his authority as Police Chief to retaliate against him for exercising his First Amendment rights by speaking out as a citizen on racial issues in the Department that were issues of public concern.  See Connick v. Myers, 461 U.S. 138, 146 (1983).

Section 1983, like § 1981, generally imposes liability on the individual who violated the plaintiff's rights.  Monell v. Department of Social Services of City of New York, 436 U.S. 658, 694 (1978).  Davis, again, chose to sue the City rather than Kliment under § 1983.  Like the § 1981 claim, Davis must show that the practice of racial discrimination and retaliation in awarding promotions in the Police Department had become a policy, practice or custom of the City that had the force of law.  Gable v. City of Chicago, 296 F.3d 531, 537 (7th Cir. 2002).

Racial discrimination in employment is often hard to prove.  Thus, the courts have developed both direct and indirect methods of presenting evidence at summary judgment to show that issues of fact exist.  McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  At any trial, however, Davis will bear the burden to prove racial discrimination and retaliation.  St.

24

Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993).

Davis may use either the direct or indirect method to show that issues of fact exist on his Title VII claims in Count I, his § 1981 claims in Count II, and his § 1983 discrimination claims in Count II. Scaife, 446 F.3d at 739; Forrester v. Rauland-Borg Corp., 453 F.3d 416 (7th Cir. 2006); Eiland v. Trinity Hosp., 150 F.3d 747, 750 (7th Cir. 1998); Stone v. City of Indianapolis, 281 F.3d 640 (7th Cir. 2002); Riordan v. Kempiners, 831 F.2d 690, 695-96 (7th Cir. 1987). The direct and indirect methods of proof do not apply at summary judgment to the Count II § 1983 retaliation claim. For this claim, Davis must present evidence that he spoke out as a citizen on matters of public concern, and the City retaliated against him for exercising his First Amendment rights. See Garcetti v. Ceballos, __ U.S.__, 126 S.Ct. 1951, 1957 (2006). All of the Count II claims also require evidence that the discrimination or retaliation was done pursuant to a City policy, practice, or custom. Monell, 436 U.S. at 694.

A.    Count I

    1.    Retaliation

The City has presented evidence showing that Kliment was the person who decided which person would be promoted to the Position and that

25

Kliment wanted a person from outside the Criminal Investigations Division to fill the spot.  To defeat the City's Motion, Davis may show that issues of fact exist on his Title VII retaliation claim by presenting direct evidence that he opposed actions that he believed violated Title VII, and as a result, suffered an adverse employment action.  <u>Stone</u>, 281 F.3d at 644.  Davis does not need to present evidence that the acts that he challenged actually violated Title VII, only that he reasonably believed that the acts violated Title VII.  <u>Hamner v. St. Vincent Hosp. and Health Care Center, Inc.</u>, 224 F.3d 701, 707 (7th Cir. 2000).  Furthermore, direct evidence means evidence that establishes each element without resorting to inferences from circumstantial evidence.  <u>Stone</u>, 281 F.3d at 644.

Davis has direct evidence that he opposed actions that he believed violated Title VII.  He filed an EEOC charge of discrimination in 2002 alleging racial employment discrimination, and he filed a law suit in 2003. He also advocated extending the Sergeant list in October 2003 because the Department had no African American Sergeants.

Davis also has direct evidence that he suffered an adverse employment action.  He applied for a promotion to the Position, but was not selected for the Position.  It is unclear from the record whether Davis would receive an

increase in pay in the Position, but he would move up in the Department's hierarchy with greater authority and responsibility within the Department. The failure to be selected for this higher position was an adverse employment action.  See Smart v. Ball State University, 89 F.3d 437, 441 (7th Cir. 1996).

However, Davis does not have direct evidence that he was not selected for the promotion because of his opposition to racial discrimination.  Davis relies on Kliment's disputed conversation with Davis in early October 2003. For purposes of the City's Motion, the Court must assume Davis' version of the conversation is correct.  According to Davis, Kliment said people would be disappointed when he announced the promotions to Deputy Chief.  This statement could indicate that Kliment was going to deny Davis the position because Davis was pressing him about extending the Sergeant list.  The statement could also mean that Kliment had already made the decision before the conversation with Davis occurred, and Kliment blurted out the fact that he had already made the decision because Davis was annoying him.  The finder of fact must draw an inference from the circumstances to determine Kliment's meaning.  As such, the statement is not direct evidence of a causal connection.  Ajayi v. Aramark Business

Services, Inc., 336 F.3d 520, 534 (7th Cir. 2003) (supervisor's comment at the time he suspended the plaintiff was not sufficient to constitute direct evidence of retaliation).

Davis, therefore, must proceed under the indirect method of proof. Under the indirect method, Davis must present evidence that: (1) he opposed actions that he believed violated Title VII; (2) he was subjected to an adverse employment action; (3) a similarly situated employee who did not engage in protected activity was not subjected to an adverse employment action; and (4) he was performing his duties satisfactorily. Stone, 281 F.3d at 644.  If he presents evidence that would establish this prima facie case, then the City must present a valid, non-retaliatory reason for the employment decision.  Id.  Davis must then present evidence that the stated reason is a pretext.  Id.  A pretext is a lie.  The Seventh Circuit recently clarified the definition of pretext in Forrester.  The plaintiff must present evidence that the stated reason is not the true reason for the actions; it is not sufficient to prove that there is no factual basis for the stated reason or the stated reason was not sufficient to motivate the action.  He must show that the stated reason is false. Forrester, 453 F.3d at 418-19.

Davis makes out a prima facie case under the indirect method.  As

explained above, he opposed acts that he believed violated Title VII, and he suffered an adverse employment action.  He also presented evidence that: (1) he was performing his duties satisfactorily, (2) that he was similarly situated to Rouse in terms of rank and years with the Department, (3) that Rouse received the promotion, and (4) that Rouse did not engage in protected activity.  The City does not dispute that Davis presented sufficient evidence to establish a <u>prima</u> <u>facie</u> case.

The City states that the City had a valid non-discriminatory reason for selecting Rouse for the Position.  Kliment picked Rouse because he wanted someone outside the Criminal Investigations Division and because he thought Rouse was the best person for the job for various reasons.  Davis was in the Criminal Investigations Division and so did not meet Kliment's goal of bringing in an outsider.

Davis argues that the stated reason is a pretext.  Most of the evidence that Davis presented is unpersuasive.  Davis presented witnesses who believe that Rouse is an awful Deputy Chief.  He, Young, and Madonia all testified to Rouse's near incompetence in the Position.[3]  Davis also presents evidence

---

[3]The City, no doubt, disputes these witnesses' testimony regarding Rouse's competence.  The Court, however, must view the evidence in favor of Davis for purposes of summary judgment.

that Rouse effectively shut Davis out of many meetings.  All of these events happened after Rouse took the Position.  The evidence, thus, tends to show that Kliment was wrong in his assessment of Rouse's ability to perform the Position, but this evidence does not indicate that in October 2003, Kliment did not believe that Rouse was the best person for the Position and that Kliment did not want an outsider to take over the Criminal Investigations Division.  In short, the evidence does not indicate whether the City and Kliment were lying when they stated the reasons for Kliment's decision to promote Rouse to the Position.

Davis' disputed conversation with Kliment in early October 2003, however, may show pretext. Davis states that he was pressing Kliment about the lack of African American Sergeants in the Department; he wanted Kliment's support to extend the Sergeant list so Ralph Harris could be promoted.  Kliment then, out of the blue, brought up the topic of the Position and told Davis that some people will be disappointed about the Deputy Chief selections.  The fact that Kliment brought up the topic of the Position during this conversation raises an inference that Kliment may have tied Davis' persistent pressuring to extend the Sergeant list to the selection of a person to fill the Position.  If so, Kliment's stated reason for rejecting

Davis and selecting Rouse for the Position may not be true; rather, he may have tied his decision to Davis' pressure to extend the Sergeant list.[4]  This evidence is sufficient to create an issue of fact concerning whether the stated reason was a pretext, for purposes of this summary judgment motion.  See Ajayi, 336 F.3d at 533-34 (supervisor's comment at the time he suspended the plaintiff was not sufficient to constitute direct evidence of retaliation, but was evidence to show that stated reason was a pretext).

Kliment denies ever making these statements.  His denial, however, only creates an issue of fact for trial.  For purposes of summary judgment, the Court must believe Davis' version of events and draw all reasonable inferences in favor of Davis.  The City's Motion for Summary Judgment on the Title VII retaliation claim in Count I is denied.

    2.   Discrimination

The City's Motion for Summary Judgment is also denied for the Title VII claim of racial employment discrimination in Count I.  Davis again does not have direct evidence.  He may present evidence under the indirect

---

[4]Davis also notes that the other three Deputy Chiefs selected by Kliment all had experience in at least one of the areas under his authority.  This fact constitutes some, slight circumstantial evidence that calls into question whether Kliment wanted an outsider over the Criminal Investigations Division.

method.  Davis must present evidence of a prima facie case that: (1) he is a member of a protected class; (2) he was qualified for the Position; (3) despite his qualifications, he was rejected; and (4) the Position was filled with a person not in the protected class.  See Gorence v. Eagle Food Centers, 242 F.3d 759, 765 (7th Cir. 2001).  Davis presented evidence of a prima facie case.  He is an African American man; he was qualified for the Position; and he was rejected in favor of Rouse, a Caucasian man.  The City again does not dispute that Davis made out a prima facie case.

The City must present a non-discriminatory reason.  Id.  It has done so; Kliment wanted an outsider and thought Rouse was the best person for the job.  Davis must produce evidence that the City's proffered reason for the selection of Rouse is a pretext.  As explained above he has done that.  Kliment's comments in the October 2003 conversation create an issue of fact regarding whether Kliment rejected Davis for the Position because Davis was pressuring him about the Sergeant list, not because Kliment thought Rouse was the best person for the job.  Davis has met his burden to overcome summary judgment.

The Court notes that Davis has not presented any evidence that Kliment acted out of racial animus.  At summary judgment, Davis is not

obligated to present evidence that race was the real reason, only that the stated reason was false.  <u>Forrester</u>, 453 F.3d at 417.[5]  The City also disputes whether Kliment ever made the statement.  Kliment denies it.  It will be for a jury to decide whether to believe Davis or Kliment.  At this point, Davis has overcome summary judgment on his Title VII claims.

    B.    <u>Count II</u>

The City is entitled to summary judgment on Count II.  Davis chose to sue only the City, not Kliment or any other individual for personal liability.  Normally, liability under § 1981 and 1983 is imposed personally on the individual who committed the discriminatory or retaliatory act.  <u>See Auriemma v. Rice</u>, 957 F.2d 397 (7th Cir. 1992).  Liability will only be imposed on a municipality if the municipality is directly culpable for the actions.  A municipality is only culpable for the discriminatory or retaliatory actions of its employees if the actions were taken pursuant to official City policy or if the actions were taken as part of a custom or practice of the City.  To be a custom or practice, the actions must be so wide-spread and pervasive that they amount to a practice that has the force of law.  <u>Gable</u>,

---

[5]At trial, however, Davis must prove intentional racial discrimination or intentional retaliation to prevail on either Title VII claim.  <u>St. Mary's Honor Center</u>, 509 U.S. at 511.

296 F.3d at 537; <u>Sims v. Mulcahy</u>, 902 F.2d 524, 542 (7th Cir. 1990).[6]  To have the force of law, City policy makers must know of the custom or practice and be deliberately indifferent to the known or obvious consequences of the custom or practice.  <u>Gable</u>, 296 F.3d at 537-38.  The City policy makers are those who have the authority to adopt rules and conduct government.  <u>Killinger</u>, 389 F.3d at 771; <u>Auriemma</u>, 957 F.2d at 399-401.

Davis has no evidence that the City had an official policy of not promoting African American police officers.  Davis also has no evidence of a practice or custom of not promoting African American police officers.  He has no evidence of another instance in which an African American officer applied for promotion and was rejected.  The only contemporaneous example presented was that of Ralph Harris seeking promotion to Sergeant.  In that instance, the City extended the Sergeant list, and Harris was promoted.  Davis notes that Kliment and others opposed the promotion.  The internal debate among City officials does not prove a custom or practice of not promoting African Americans when the ultimate decision was to

---

[6]Davis does not rely on any claim that the body with final policymaking authority for the City took the retaliatory actions against him.  <u>See</u> <u>Killinger v. Johnson</u>, 389 F.3d 765, 771 (7th Cir. 2004).

extend the list and promote Harris.

Davis' other evidence regarding promotion of African Americans police officers is several years old and so does not directly relate to customs and practices that may have existed in 2003.  See Calusinski v. Kruger, 24 F.3d 931, 936 (7th Cir. 1994) (the issue is the custom or practice at the time of the incident at issue).  This evidence also does not show a custom or practice of discriminating against African Americans in promotion.  In 1994, Davis and three other African American officers applied and were promoted to Sergeant.  Again, there was an internal debate, but the City ultimately promoted all four African American applicants.  Harvey Davis was also made Police Chief in the mid-1990s.  Rickey Davis was later promoted to Lieutenant.  Williams was promoted to Assistant Chief and, later, had his title changed to Deputy Chief after Kliment's reorganization.  Davis has presented no evidence of another incident in which an African American police officer applied for a promotion in the Department and did not receive it.  He has no evidence of a custom or practice of not promoting African American police officers.

Davis further has presented no statistical evidence on promotions.  He has presented no evidence of the percentage of African American officers

that have been promoted, compared to the percentage of Caucasian officers. He has presented no evidence about the time in grade spent by African American officers before promotion as compared to Caucasian officers. He has presented no other statistical data about the promotion of African American officers.

Davis submits evidence that the Department has not increased the number of African American officers since 1981, and that the percentage of the Department's officers that are African Americans has dwindled, despite the fact that the City has an official policy of affirmative action and has set a goal of increasing the percentage of minority officers in the Department. This evidence is insufficient. None of the evidence relates to promotions.

The low number of African American officers in the Department, alone, also does not prove discrimination. Davis has not presented any evidence of the number of qualified African Americans who applied to be officers, but who were not hired during any time period prior to October 2003.[7] Without evidence that qualified African Americans applied and were

---

[7]He has presented one assertion by Alderman McNeil that, in 2005, eleven African American officers applied and were qualified, but the City hired eleven Caucasian officers instead. Davis Exhibit 6, Deposition of Frank McNeil at 22. As explained above, Davis did not properly disclose McNeil as a witness. Also, a hiring decision in 2005 is not probative of the custom or practice in 2003. Calusinski, 24 F.3d at 936. Finally, McNeil indicated that the Caucasian applicants who were hired may have ranked

not hired, the low number of African American officers does not show that the City has discriminated against African American applicants.  See Johal v. Little Lady Foods, Inc., 434 F.3d 943, 947 (7th Cir. 2006) (evidence of no minorities in management is not evidence of discrimination absent evidence of the qualifications of the individuals who were retained, hired, or demoted).

Much of Davis' evidence also occurred long before or after October 2003.  The relevant inquiry is the existence of a custom or practice on the date of the incident.  See Calusinski, 24 F.3d at 936.  The evidence from years earlier provides historical background, but has little or no probative value of the practices or customs in 2003.  Some of the evidence also concerns actions that the City took more than a year after the October 2003 promotion decision.  Evidence of actions taken long after the adverse employment action are also not particularly relevant to prove the practice or custom in place at the time of the action.  Id.

Davis has also presented evidence that the City has been ineffective in implementing the affirmative action policy of increasing the number of

---

higher in the application process than the African American applicants who were not. McNeil Deposition at 22-23.  There is no showing of discrimination if the applicants hired were the best qualified.

African American officers in the Department.  Mayor Davlin stated that the City's efforts have been a complete failure.  Deputy Chief Williams stated that the Recruitment Committee was in shambles.  Davis and Ralph Harris made suggestions that Davis says were received negatively; however, the City adopted the banding proposal suggested by Davis.  The two men were removed from the Recruitment Committee.   The City also has not submitted some of its reports under the consent decree to the NAACP in a timely fashion.

The ineffectiveness of the City's efforts to recruit and retain more African American police officers does not, by itself, show a custom or practice of discrimination in hiring or retention.  The fact that the number of African American officers remains low does not show whether the City is trying, but failing to attract qualified African American applicants, or is discriminating against qualified African American applicants.  Again, Davis presented no evidence on the number of African Americans who applied or wanted to apply and the qualifications of those individuals.   Without information on the qualifications of the individuals who were hired and individuals who were not hired, Davis cannot show whether anyone interested in becoming a City police officer was discriminated against.

Johal, 434 F.3d at 947.

Also, efforts to hire new African American officers do not directly relate to promotions.  No evidence indicates that the Recruitment Committee had anything to do with promotions.  There is no showing that Davis and Ralph Harris' suggestions for the Recruitment Committee had anything to do with promotions.  This evidence does not show that the City had a custom or practice that had the force of law of not promoting African American police officers.  Gable, 296 F.3d at 537-38.

Davis also submitted depositions of McNeil, Robinson, Edwards, Renfrow and Dewith-Anderson to support his claim of a custom or practice of discrimination in the promotion of African American officers.  The Court excluded these depositions for the reasons stated above.  Davis and his attorney should have followed the Federal Rules of Civil Procedure if they wanted the Court to consider this evidence.

Davis also has no evidence of a policy, custom or practice to retaliate against officers who speak out about racial discrimination.[8]  Davis has no evidence that any other officer was denied a promotion because he spoke

---

[8]Since Davis does not have evidence of a policy, custom or practice of retaliation, the Court does not need to address whether he spoke out on a matter of public concern for purposes of his First Amendment § 1983 claim.

out about racial discrimination.  Davis, himself, started speaking out about racial discrimination early in his career.  He continued to speak out vigorously on this subject.  He was promoted twice, to Sergeant and then Lieutenant.  On at least one occasion in 2003, the City responded positively to Davis' public comments about promoting African American officers.  He fought to extend the Sergeant list in 2003 so Ralph Harris could be promoted, and the City agreed with him and extended the list.  Other than his application to be Deputy Chief, Davis has not cited an example where an African American police officer has spoken out about racial issues and been denied a promotion.  He has no evidence of a policy, practice or custom of retaliation.

He claims that he was demoted from Criminal Investigations to the Patrol Division in 2006.  That occurred over two years after the denial of the promotion to the Position and is not relevant to show that he was discriminated against as a result of a policy, practice or custom of retaliation that existed in 2003-2004.  Calusinski, 24 F.3d at 936.  He also argues that the City retaliated against him personally by following him while he was working.  One incident directed at him is insufficient to show a policy, practice or custom of retaliation by the City.  Sivard v. Pulaski County, 17

F.3d 185, 188 (7th Cir. 1994).  The City is entitled to summary judgment on Count II.

THEREFORE, The Defendant's Motion for Summary Judgment (d/e 66) is ALLOWED in part and DENIED in part.  Summary judgment is entered in favor of the Defendant City of Springfield and against the Plaintiff Rickey Davis on Count II of his Complaint (d/e 1).  Summary Judgment on Count I is DENIED.  The Motion to Strike Davis' Affidavit (d/e 70) and Motion to Strike Davis' Exhibits (d/e 74) are ALLOWED in part and DENIED in part.  The parties are directed to file Motions in Limine by September 25, 2006, setting forth their positions on the appropriate scope of the evidence that should be admitted at the trial on the Title VII claims in Count I.  All other pretrial motions are also to be filed by September 25, 2006.  Responses to any Motions in Limine or other pretrial motions are due by September 29, 2006.  The pretrial conference remains scheduled for October 2, 2006, at 11:00 a.m.

IT IS THEREFORE SO ORDERED.

ENTER:   September 19, 2006.

FOR THE COURT:

s/  Jeanne E. Scott

JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE