IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| RICKEY B. DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) CASE NO. 04-3168 |
| | ) |
| CITY OF SPRINGFIELD, ILLINOIS, | ) |
| A Municipal Corporation, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTIONS IN LIMINE**

### I. INTRODUCTION

Plaintiff Rickey Davis, who was a police Lieutenant, alleges that Defendant City of Springfield refused to promote him to Deputy Chief of the Criminal Investigations Division on account of his race, black, and in retaliation for speaking out against racially discriminatory employment practices. Defendant has filed numerous motions in limine, fifteen of them, almost all of which are irrelevant or meritless.

### II. DISCUSSION

At the outset, Defendant asks that evidence that other officers, both peers and superior ranks, viewed, saved and shared dozens of pornographic images, and sent and received personal, sexual electronic mail, on equipment supplied by Defendant for official police business, be excluded. Defendant argues that this evidence is prejudicial to Defendant and the prejudice outweighs the probative value this evidence might have because it was not "discovered" until after the promotion decisions at issue in this case. See Defendant's First Motion in Limine.

First, it does not matter when Plaintiff "discovered" this evidence. What matters is whether Defendant knew or should have known, but treated white officers and officers who did not engage

in protected activity differently and less well than it treated Plaintiff. Whether this evidence will be offered will depend on a host of developments at trial. If, however, Plaintiff seeks to offer this evidence, he will do so after he establishes by competent evidence that Defendant knew about these work offenses committed by white officers and by officers who did not engage in protected activity, and turned a blind eye. This evidence is relevant to several issues in this lawsuit, including defenses concerning Plaintiff's alleged failure to follow a work policy; alleged concerns about Plaintiff's "work ethic"; retaliatory discipline Chief Kliment issued Plaintiff shortly after taking office; and Chief Kliment's claim that Deputy Chief Rouse, who was well known to him, was well-respected, honest and followed policies. The jury is entitled to hear that the police department's Chief and Deputy Chiefs engaged in this conduct or knew about it and did not act. While the subject matter is distasteful and offensive, it is certainly relevant to the jury's consideration of the legitimacy of Defendant's claims that it rejected Plaintiff for consideration for promotion in part because he got one written reprimand for failing to follow a work rule by being at home for dinner, years earlier.

Plaintiff does not intend to call Lawrence Golden in his case in chief. Defendant's Second Motion in Limine, to the extent it seeks to bars that testimony, is moot.

Defendant also seeks to exclude all evidence of the history of racial discrimination by the City of Springfield, barring any mention of "historical materials." See Defendant's Motion in Limine No. 3. This motion is overbroad and should also be denied. Plaintiff's knowledge of this historical discrimination is relevant to his proof that he acted in good faith when he engaged in protected activity, and he must prove this element of his case. Some mention of this historical backdrop will assist him in doing so. Moreover, relevant background information gives context and meaning to protected activity, and it cannot be excised from the case simply because Defendant

wants to keep it from the jury. The risk of prejudice to Defendant, if any, can be cured with a limiting instruction.

Defendant's fifth motion in limine contends that nine individuals should not be allowed as trial witnesses because they were not identified by Plaintiff in his Rule 26 disclosures prior to the discovery cut-off. However, Defendant has waived this argument, at least with respect to five of the individuals, namely Mitzi Vasconcelles, Ralph Harris, Lea Joy, Ed Flesch and Randy Wilson.

Notably, Plaintiff mentioned all five of these individuals in his response to the motion for summary judgment without Defendant ever objecting that they had not been properly disclosed to it pursuant to Rule 26. See Mitzi Vasconcelles (Plaintiff's Statement of Facts at paras. 201-202, 205, and 258; Ex. 34), Ralph Harris (Plaintiff's Statement of Facts at paras. 163, 189-90, 252-55, 261, 263, 265-69, 318, 368, 371-74, 377-79, 381, 385-86, 390; Ex. 43), Lea Joy (Plaintiff's Statement of Facts at paras. 230, 233, 245-46, and 280), Ed Flesch (Plaintiff's Statement of Facts at paras. 170-171), and Randy Wilson (Plaintiff's Statement of Facts at paras. 173-74, 395-96). Indeed, Defendant itself cited to some of these individuals in its motion for summary judgment. See Ralph Harris (Defendant's Statement of Facts at paras. 33-35; Defendant's Statement of Facts at paras. 33-35; Defendant's Memorandum at pp. 26-27), Lea Joy (Defendant's Statement of Facts at para. 36), Randy Wilson (Defendant's Statement of Facts at paras. 16-17; Defendant's Memorandum at pp. 18-19).

Defendant objected to four individuals in connection with the motion for summary judgment (Todd Renfrow, Frank McNeil, Frank Edwards and Sandy Robinson) but not these other five potential witnesses. Under the circumstances, its complaint about them, on the eve of trial, comes too late. See **Cash v. State Farm Fire & Cas. Co.**, 125 F. Supp 2d 474, 477 (M.D. Ala. 2000) (party cannot "sleep on its rights" under Rule 26).

There is a further consideration. Defendant has taken exactly one deposition in this case - - of Plaintiff Davis. It has not taken any other depositions, and has propounded zero interrogatories and requests to product documents. Given this reality, Defendant cannot seriously contend that it would have conducted any discovery with respect to the nine individuals. It will not suffer any prejudice if any or all of them are allowed to testify at trial.

Next, Defendant wants to exclude any evidence of racial discrimination or retaliation in all city departments, except for the police department, as well as statistics regarding the racial composition of these departments. See Motions in Limine Nos. 7 and 12. Its argument reflects an unduly narrow view of the scope of permissible evidence in a Title VII case.

Establishing an employer's biased or retaliatory state of mind is a difficult undertaking. As a result, "a plaintiff's ability to prove discrimination indirectly, circumstantially, must not be crippled by evidentiary rulings that keep out probative evidence because of crabbed notions of relevance or excessive mistrust of juries." **Riordan v. Kempiners**, 831 F.2d 690, 697 (7th Cir. 1987). The U.S. Supreme Court made it clear that the kind of evidence to which Defendant objects should be freely admitted in an employment discrimination case:

> Evidence that may be relevant to any showing of pretext includes . . . petitioner's general policy and practice with respect to minority employment. On the latter point, statistics as to petitioner's employment policy and practice may be helpful to a determination of whether petitioner's refusal to rehire respondent in this case conformed to a general pattern of discrimination against blacks.

**McDonnell Douglas Corp. v. Green**, 411 U.S. 792, 804-805 (1973). Courts in the Seventh Circuit have echoed this reasoning. "Evidence of a company's discriminatory conduct with respect to employees other than the named plaintiff might support an inference of discrimination and is clearly

relevant." **Bernstein v. Consolidated Foods**, 1985 U.S. Dist. LEXIS 13685 at *6-7 (N.D. Ill. Nov. 20, 1985) (Rovner, J.); see also **Bell v. EPA**, 232 F.3d 546, 553 (7th Cir. 2000).

The City of Springfield pays insufficient attention to the fact that it, not the police department, is the Defendant in this case. Evidence concerning municipal-wide employment practices is relevant and admissible to show a climate or atmosphere of racial discrimination or retaliation in the city government that may cast a revelatory light on the decision to deny promotion to Plaintiff Davis.

A case on point is **Diaz v. AT& T**, 752 F.2d 1356 (9th Cir. 1985). There, the employee sued his employer, alleging racial discrimination, when he was refused promotion to a better position. The employer objected to employment statistics for the western region of the company, or any area outside the city where the employee worked, claiming the regional statistics were irrelevant, since promotion decisions were made locally. The federal appellate court rejected this argument, pointing out that "one way of reaching conclusions about an employer's motives is by ascertaining whether the employer's explicit or implicit policies encourage or permit discriminatory employment decisions by its supervisory personnel." 752 F.2d at 1364. Many other federal appellate courts agree with this analysis. See, e.g., **Lynn v. Regents of the Univ. Of Calif.**, 656 F.2d 1337, 1342 (9th Cir. 1981) (defendant's university-wide tenure-granting pattern, not just the tenure pattern in individual departments, is relevant in a disparate treatment case); **Hollander v. American Cyanamid Co.**, 895 F.2d 80, 84 (2d Cir. 1990) ("although the request goes beyond the narrow confines of the Davis and Geck Danbury facility in which Hollander worked and pursues facts pertaining to American Cyanamid's employment practices more generally, it is relevant to Hollander's case").

Equally unavailing is Defendant's related argument, made in its fourth, sixth and eighth

5

motions in limine, that evidence of other employment discrimination lawsuits against it are irrelevant. As before, federal circuits have rejected the argument:

> At trial, Phillip made several offers of proof of evidence which he believed to be probative of his ADEA claim. These proof offers included evidence of other age discrimination lawsuits filed against ANR. The district court found that Phillip had failed to show that the cases were sufficiently similar to his own case and therefore the evidence was excluded on the grounds that it was irrelevant and unduly prejudicial. We must disagree with the district court's exclusion of this important evidence . . . The admission of such background evidence may be critical for the jury's assessment of whether a given employer was more likely than not to have acted from an unlawful motive.

**Phillip v. ANR Freight Systems**, 945 F.2d 5054, 1056 (8th Cir. 1991). Contrary to Defendant's suggestion, it does not matter whether the lawsuits culminated in a judgment against it, anymore than it matters whether its past acts of discrimination or retaliation against other employees culminated in a lawsuit or a judgment.

The bald assertion that mention of a co-plaintiff's allegations in another pending lawsuit has "no bearing" on the issues in this case is baseless. Plaintiff's protected activity includes his earlier lawsuit with Ms. Frazier and his acts on her behalf. This is by definition relevant in a lawsuit alleging retaliation.

Defendant's ninth motion in limine, which seeks to exclude evidence of William Rouse's job performance after his promotion to Deputy Chief, has arguable merit. Though not cited by Defendant, a Seventh Circuit case has held that such evidence should not be admitted for the purpose of showing that the successful candidate was less qualified than the plaintiff for the position in question. **Cullen v. Olin Corp.** 195 F.3d 317, 323-325 (7th Cir. 1999). In obedience to this precedent, Plaintiff Davis will not introduce evidence concerning Mr. Rouse's subsequent job

performance.

As for its tenth motion in limine, Defendant errs in assuming that Plaintiff Davis will introduce evidence concerning his transfer from Criminal Investigations to Field Operations. He will not. To be sure, Plaintiff may introduce evidence of certain discriminatory or retaliatory acts by Defendant following the denial of the promotion, such as exclusion from meetings, but not as separate freestanding claims for which he seeks damages. Rather, such conduct by Defendant is relevant and admissible to illuminate its discriminatory or retaliatory state of mind in denying the promotion to Plaintiff Davis. **McDonnell Douglas Corp.**, 411 U.S. at 804 (evidence relevant to a showing of pretext includes facts as to the employer's treatment of the plaintiff during the term of his employment).

The logic behind Defendant's eleventh motion in limine is less than clear. It seeks to restrict the testimony of several of the individuals it says were listed by Plaintiff Davis as potential witnesses to the narrow topic for which they were listed by Defendant in its initial discovery disclosures, namely Plaintiff's general work ethic and his whereabouts during working hours. There is no basis in the Rules, or in common sense, for such an arbitrary limitation on the scope of the testimony of these witnesses.

Defendant misses the mark again when it invokes the rule of exhaustion of administrative remedies. It contends that evidence of discriminatory or retaliatory conduct after Plaintiff Davis was denied promotion to Deputy Chief is inadmissible because it is outside the scope of the administrative charge he filed with the Illinois Department of Human Rights. See Motion in Limine No. 13. But employees are barred from raising new *claims* in court that were not raised in the administrative charge -- not new *evidence* in support of a claim that was raised in the charge. **Green**

**v. National Steel Corp.**, 197 F.3d 894, 898 (7th Cir. 1999).  With his evidence Plaintiff Davis is not asserting an additional claim of discrimination or retaliation but simply lending support to the claim of denial of promotion to Deputy Chief already asserted in the administrative charge.

Defendant also seeks to exclude any testimony regarding damages on grounds that Plaintiff did not disclose such information before the close of discovery.  See Defendant's Fourteenth Motion In Limine.  Contrary to Defendant's assertion, plaintiff did not repeatedly "refuse" to state his damages.  Plaintiff's Third Amended Rule 26 Disclosures, served on January 4, 2007, after the close of discovery, did address the economic damages claimed, that is, the lost wages consisting of the difference in pay between a Lieutenant and a Deputy Chief, the rank Plaintiff unsuccessfully sought.  There is no prejudice to Defendant in this late disclosure for several reasons.

First, the calculation of economic damages, i.e. backpay, in employment discrimination cases is simple and formulaic.  Both of the underlying pay rates of Lieutenant and Deputy Chief are known to Defendant.  Defendant has not been harmed and there is no surprise that can or will be sprung.  Second, Defendant moved to bifurcate damages from liability at the trial of this case.  The Court agreed to do so for backpay.  No evidence about backpay will be offered in this trial because that is the order of this Court, and Defendant cannot be heard to complain of harm by an Order it sought.

Moreover, Defendant did no discovery about damages specifically set forth in Plaintiff's Complaint, including compensatory damages, injunctive relief and attorney's fees and costs. Defendant did not ask a single question about lost wages or the basis for claimed compensatory damages in Davis' deposition in this case.  Defendant served no Interrogatories, nor did it request production of any documents concerning the issue.  Finally, non-pecuniary compensatory damages are solely within the jury's province to determine, and not a matter that is subject to any computation

as contemplated by Rule 26(a)(1)(C). Plaintiff did not and could not set forth a computation of his claimed compensatory damages in his Rule 26 disclosure because no such thing exists, and he did not fail to comply with Rule 26 on this score.

All that remains to be considered is Defendant's Fifteenth Motion in Limine, asking that Plaintiff not be permitted to call witnesses awarded the jobs of Deputy Chief and Assistant Chief by Chiek Kliment because Plaintiff "did not apply" for these other jobs. Defendant fails to inform the Court, however, that Deputy Chief Rouse "did not apply" for the job Chief Kliment gave him in the Criminal Investigations Division. Plaintiff will put on evidence that Kliment gave Rouse a job for which he did not apply. That opens the door for evidence of the qualifications of others that Kliment placed in the jobs he filled when he "reorganized" the police department in October 2003. Kliment's actions vis a vis these other "applicants," and their qualifications are relevant to Plaintiff's claims that Kliment was motivated by Plaintiff's race and his protected activity in denying him promotion.

### III. CONCLUSION

For the reasons discussed, Defendant's fifteen motions in limine, with the exception of numbers two and nine, should be denied by the Court.

Respectfully submitted,

/s/ Donna L. Harper
DONNA L. HARPER
Missouri Bar No. 26406
Sedey Harper, P.C.
Attorneys at Law
2711 Clifton Avenue
St. Louis, Missouri 63139
314-773-3566
314-773-3615 fax
dharper@sedeyharper.com

9

**CERTIFICATE OF SERVICE**

    I hereby certify that on August 22, 2007, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jennifer Johnson<br>
Corporation Counsel<br>
James Lang<br>
Frank Martinez<br>
Assistant Corporation Counsel<br>
Room 100, Municipal Center West<br>
300 South Seventh Street<br>
Springfield, Illinois 62701-1680

There are no non-registered participants.

                                                /s/ Donna L. Harper