**E-FILED**
Wednesday, 01 April, 2009 09:49:13 AM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| RICKEY B. DAVIS,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SPRINGFIELD, ILLINOIS,<br><br>Defendant. | ) | No. 04-3168 and<br>consolidated case<br>No. 07-3096 |

**OPINION**

BYRON G. CUDMORE, U.S. Magistrate Judge:

Pending before the Court is a Motion to Quash Plaintiff's Subpoena (d/e 203) (Motion to Quash) filed by non-party witness Dusty Rhodes. Rhodes asks the Court to quash a subpoena served on her by Plaintiff Rickey B. Davis that requires her to appear for deposition and produce documents. Davis opposes the Motion to Quash. Plaintiff's Memorandum in Opposition to Motion to Quash Subpoena (d/e 207) (Plaintiff's Opposition). Rhodes has filed her Court-ordered reply. Memorandum of Law in Reply to Plaintiff's Memorandum in Opposition to Motion to Quash (d/e 215) (Rhodes' Reply). The Court then granted Davis leave to file a surreply, which he has done. Plaintiff's Surreply Memorandum in Opposition to Motion to Quash Subpoena (d/e 217) (Plaintiff's Surreply).

Thus, the matter is fully briefed and ripe for determination. This Court has jurisdiction to consider the matters pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 72.1. For the reasons set forth below, the Motion to Quash is allowed.

BACKGROUND

Davis' Second Amended Complaint (d/e 172) alleges claims of race discrimination and retaliation under Title VII (Count I) and 42 U.S.C. §§ 1981 & 1983 (Count II). Davis is an African-American male who, at all relevant times, was employed by Defendant City of Springfield, Illinois as a police officer. According to the Second Amended Complaint, Davis has previously filed claims of race discrimination and retaliation against the Defendant and has spoken out against race discrimination in the City of Springfield and the Springfield Police Department (SPD). Davis alleges that Defendant discriminated and retaliated against him by taking action affecting the terms and conditions of his employment, issuing unwarranted discipline against him, mishandling Internal Affairs matters against him, transferring him from the criminal investigations division to the patrol unit, transferring him from the day shift to the midnight shift and then to the

second shift, and releasing confidential medical information about him to the general public without his consent.

Rhodes is a journalist for the Illinois Times, a weekly newspaper of general circulation in Central Illinois. On September 5, 2006, Davis filed a written Application for Disability Benefits with the Springfield Police Pension Fund. Plaintiff's Opposition, Ex. 2. In the Application, Davis identified the nature of his disability as "Depression." Id. Rhodes wrote about the application in an article entitled "Shift Change: Controversial cop wants out; hasn't worked since March 7" which appeared in the September 14, 2006 edition of the Illinois Times. Plaintiff's Opposition, Ex. 3. The article noted that "Davis, known for his outspoken leadership of the Black Guardians Association, has applied for duty-related disability, citing depression." Id. The article contained a general explanation of the disability pension process from SPD officer Kevin Barrington, who was president of the Pension Fund Board. According to the article, Barrington would not comment on Davis' case, stating that "the board members will vote on facts they're given." Id. The article also noted that "Davis declined to comment." Id. Davis avers that he eventually "withdrew [his] application for a disability pension because of the public disclosure in the Illinois Times and the

resulting questions and comments [he] received." Plaintiff's Opposition, Ex. 1, Affidavit of Rickey R. Davis (Davis Aff.), ¶ 6.

Davis issued the subpoena at issue on January 9, 2009. Plaintiff's Opposition, Ex. 4. The subpoena directed Rhodes to appear for deposition on February 25, 2009 and to produce for inspection and copying "any notes or documents concerning Rickey Davis' request for disability retirement as reported by you on or about 9/14/06." Id. Rhodes filed the pending Motion to Quash on February 19, 2009, asserting that the subpoena imposes an undue burden on her and, alternatively, that compliance with the subpoena would require disclosure of a trade secret or other confidential research information.

ANALYSIS

A party has a general right to subpoena any person to appear at a deposition or to produce documents for inspection and copying. Fed. R. Civ. P. 45. This right is not limitless, however, and Fed. R. Civ. P. 45(c) provides several express protections for individuals subject to subpoena. Under Fed. R. Civ. P. 45(c)(3)(A)(iv), upon timely motion, the issuing Court must quash or modify a subpoena that "subjects a person to undue burden." Under Fed. R. Civ. P. 45(c)(3)(B)(I), upon motion, the issuing

Court may quash or modify a subpoena that requires the disclosure of "a trade secret or other confidential research, development, or commercial information."

As a threshold matter, the Court addresses the scope of the subpoena. The subpoena directed Rhodes to appear for deposition and to produce for inspection and copying "any notes or documents concerning Rickey Davis' request for disability retirement as reported by you on or about 9/14/06." Plaintiff's Opposition, Ex. 4. It is apparent from the briefing, however, that Davis is interested in only a small portion of the information sought in the subpoena. Davis asserts that he "wants to depose Ms. Rhodes to find out who revealed to her that he was suffering from depression, in particular whether it was an employee or official of Defendant" and that he "wants to examine any notes or summaries of her interview with the informant." Plaintiff's Opposition, p. 3; see also id., p. 10 ("All Mr. Davis is seeking, however, are any notes she took of her interview with the source or any summaries she made of the interview."). Therefore, the Court finds that Davis concedes the Motion to Quash as it relates to other information. Thus, the Motion to Quash is allowed as it relates to all information other than the identity of the source who informed Rhodes of

Davis' pension application and any notes or summaries of her interview with the informant.

After the Seventh Circuit's decision in McKevitt v. Pallasch, 339 F.3d 530 (7th Cir. 2003), it is clear that our circuit does not recognize a blanket federal reporter's privilege. McKevitt was being prosecuted in Ireland for terrorism. By motion in the United States District Court for the Northern District of Illinois, McKevitt sought tape recordings from journalists that he believed would be useful to him in the cross-examination of David Rupert, a key prosecution witness. Id. at 531. The journalists, who had a contract to write Rupert's biography, interviewed him in the course of their research and made tape recordings of the interviews. The District Court directed that the recordings be turned over, and the journalists appealed. The Seventh Circuit declined to stay the disclosure. The Seventh Circuit, citing Branzburg v. Hayes, 408 U.S. 665 (1972), specifically rejected the argument that the First Amendment provides journalists special protection against subpoenas with respect to information from non-confidential sources. McKevitt, 339 F.3d at 533. Additionally, while McKevitt involved non-confidential sources, the Seventh Circuit has subsequently noted in dicta that generally "[t]here isn't even a reporter's privilege in federal

cases." United States Dept. of Educ.. v. National Collegiate Athletic Ass'n, 481 F.3d 936, 938 (7th Cir.2007) (citing Branzburg, 408 U.S. 665; University of Pennsylvania v. EEOC, 493 U.S. 182, 201 (1990); McKevitt, 339 F.3d 530). Moreover, the Supreme Court opinion in Brazenburg makes clear that the interest of the press in maintaining the confidentiality of sources is not absolute.

The McKevitt Court instructed "rather than speaking of privilege, courts should simply make sure that a subpoena duces tecum directed to the media, like any other subpoena duces tecum, is reasonable in the circumstances . . . ." McKevitt, 339 F.3d at 533. The Court turns first to the question of undue burden. The Seventh Circuit has applied a relative hardship test in analyzing undue burden under Fed. R. Civ. P. 45(c)(3)(A)(iv), considering whether the burden of compliance with a subpoena would exceed the benefit of production of the material sought by it. Northwestern Memorial Hosp. v. Ashcroft, 362 F. 3d 923, 927 & 933 (7th Cir. 2004). In the instant case, it is clear that the burden of compliance on Rhodes far exceeds the benefit of production to Davis.

First, Rhodes is not a party to the litigation. "[N]on-parties are not treated exactly like parties in the discovery context, and the possibility of

mere relevance may not be enough; rather, non-parties are entitled to somewhat greater protection." Patterson v. Burge, 2005 WL 43240, at *1 (N.D. Ill. Jan. 6, 2005); see also Bond v. Utreras, 2006 WL 1806387, at *4 (N.D. Ill. June 27, 2006). Burden in the third-party "context means more than mere administrative hardship. It encompasses the interests that enforced production would compromise or injure." Id. (citing Northwestern Memorial Hosp., 362 F.3d at 928-29.

    The instant case involves the identify of an undisclosed source and information related to Rhodes' interview of the source. This fact distinguishes it from McKevitt, as well as from District Court opinions refusing requests to quash as they related to non-confidential sources in Wilson v. O'Brien, 2009 WL 763785 (N.D. Ill. March 20, 2009), Mosley v. City of Chicago, 252 F.R.D. 421 (N.D. Ill. 2008), and Hobley v. Burge, 223 F.R.D. 499 (N.D. Ill. 2004),   The Seventh Circuit has deemed "obvious" the fact "that the newsgathering and reporting activities of the press are inhibited when a reporter cannot assure a confidential source of confidentiality." McKevitt, 339 F.3d at 532. Additionally, Rhodes avers that disclosing her sources and revealing her notes would severely impair her ability to successfully gather news and develop further confidential sources.

Motion to Quash, Ex. 1, Affidavit of Dusty Rhodes, ¶ 9.  The Court does not consider confidentiality alone to be dispositive, but it is one factor that clearly increases the burden of production on Rhodes.  But cf. Solaia Technology, LLC v. Rockwell Automation, Inc., 2003 WL 22597611 N.D. Ill. November 10,2003) (holding that the identity of the author of an anonymously published letter, and any documents related thereto, were properly protected from disclosure based on their confidential nature).

    Under the Seventh Circuit's decision in Northwestern Memorial Hosp., the Court may consider not only administrative hardship, but other public interests that may be compromised in enforcing a subpoena. Northwestern Memorial Hosp., 362 F.3d at 928-29.  The Court is cognizant of the fact that, while First Amendment concerns may play a role in the Rule 45(c) analysis, the Court must ensure that First Amendment considerations do not rise to the level of a federal reporter's privilege.  See Wilson, 2009 WL 763785, *8 n. 6 (citing Patterson, 2005 WL 43240, at *3). The Court considers as a factor, however, the public value of Rhodes' ability to report on information relating to the operation of the SPD.  See e.g., Patterson, 2005 WL 43240, at *3.

Davis argues that, in the event this Court were to quash the subpoena, the only sources who might be deterred from talking to Rhodes in the future would be "bad sources," i.e. individuals who violate the law in disseminating information to the press. However, Davis' attempts to characterize the source at issue here as a "bad source," who violated the law in disclosing private medical information about him to the press, are unpersuasive. The record evidence reveals only that the source informed Rhodes that Davis had filed an application for disability pension benefits in which he identified the nature of his disability as "Depression." This information does not constitute a medical diagnosis of depression or even a statement that Davis had received mental health treatment. While Alicia Barrington, the office secretary for the Springfield Police Pension Fund, testified that it was the Pension Fund's policy to treat applications for disability benefits as confidential records, Davis fails to identify any law which prohibits the dissemination of information contained in an application for benefits. Moreover, Alicia Barrington herself indicated that she was not completely familiar with the procedures for applications that did not relate directly to her part of the process. Plaintiff's Opposition, Ex. 2 & Ex. 5, Deposition of Alicia Barrington (Barrington Dep.), p. 22-23. Alicia

Barrington testified that, from time to time, the City steps in to challenge a disability pension application. She was unsure how the City obtained the information that permitted it to challenge the application, but did testify that once the City stated that it wishes to bring a challenge, she would provide the City with a copy of the application for benefits. Id., p. 23. When asked how the City would know to challenge an application if it did not know the nature of the alleged disability, Alicia Barrington replied that, once the attorney knows what is going on "they take it from there and I honestly don't know how the procedure goes from there." Id. She added that once it goes from the file to the attorney "everything starts happening and I don't honestly know." Id.

The Court turns next to the benefit Davis would gain from production. First, the Court notes that this is a civil matter, which does not implicate the important public obligation to assist in criminal prosecutions. See Patterson, 2005 WL 43240, at *4. Additionally, while the information sought may be relevant, Davis may obtain the same information from other sources, who do not face the same high burden of production that Rhodes does. Certainly, Rule 45(c) does not require Davis to exhaust other means of securing information before seeking it from Rhodes; however, the Court

will consider the availability of the information from other sources in balancing the relative hardships.  See Bond, 2006 WL 1806387, at *6 (noting that the proponent of the subpoena failed to establish that the subpoena seeks information "that is otherwise unavailable"). The relevant background follows.

On September 5, 2006, Davis filed the written Application for Disability Benefits with the Springfield Police Pension Fund by handing it to Alicia Barrington at the Springfield Police Pension Fund office.  Plaintiff's Opposition, Ex. 2; Barrington Dep., p. 8.  Alicia Barrington testified that she faxed a copy of the application to the Fund's attorney Fred Benson and placed it in a file in her locked office.  According to Alicia Barrington, she then called each of the five members of the Fund board to tell them that Davis had applied for disability.  Barrington Dep., p. 10.  Alicia Barrington testified that she most likely would have told the board members that Davis had applied for duty-related disability for depression.  Id.  Alicia Barrington testified that she did not talk to a reporter about Davis' application and that she does not have any information about how the information could have made its way into the public arena.  Id. at 14,16-17.  Alicia Barrington further testified that to her knowledge no one had access to her file and

that the only people who had keys to her office were herself and the Pension Fund board members. Id. at 13-14.

The Pension Fund board consists of five members, two SPD officers, one retired SPD officer, and two individuals appointed by the mayor. At the time Davis filed his application, the Fund board consisted of SPD officers Kevin Barrington and Scott Kincaid, retired officer Joe Pisarek, and mayoral appointees Charles Hammond and Matt Hitzemann. After receiving Davis' application, Alicia Barrington passed the information in it along to these five men and Fred Benson. In response to interrogatories, Defendant asserts that SPD personnel officer Cathy Mumaw provided a copy of Davis' application for disability benefits to corporation counsel Frank Martinez. Plaintiff's Opposition, Ex. 7, Defendant's Response to Plaintiff's Second Interrogatories to Defendant City of Springfield, ¶ 12. Although it does not indicate when this transfer occurred, the City avers that the copy of the application was requested in order to challenge Davis' request before the Pension Fund board. Id. Despite Davis' assertions to the contrary, this is not a large pool of individuals who initially had access to the information, and the ability of the information to spread beyond this

initial group was limited by the short time period that elapsed between the filing of the application and Rhodes' article.[1]

Given the circumstances set forth above, the Court finds that the burden of compliance on non-party Rhodes far exceeds the benefit of production to Davis. Thus, the challenged subpoena imposes an undue burden on Rhodes as it relates to the identity of the source who informed her of Davis' pension application and any notes or summaries of her interview with the informant. Because the subpoena imposes an undue burden on Rhodes, the Court must quash it. Fed. R. Civ. P. 45(c)(3)(A)(iv). The Court need not address Rhodes' alternative argument that compliance would require disclosure of a trade secret or other confidential research information. See Fed. R. Civ. P. 45(c)(3)(B)(I).

---

[1] Davis asserts that the pool of potential leaks also includes SPD Police Chief Kliment and his senior staff. The testimony cited in support of this assertion makes clear, however, that, although Kliment became aware that Davis had applied for a disability pension, he did not immediately know Davis' alleged basis for benefits. Plaintiff's Opposition, Ex. 6, Deposition of Donald W. Kliment, p. 139-40. Kliment testified that Kevin Barrington called to tell him that Davis had applied for duty-related disability benefits, but that Barrington did not tell him the basis and Kliment does not believe he asked for the basis. Kliment testified that he then notified corporation counsel and that he may have told his senior staff. Kliment denied talking to anyone from any newspaper concerning Davis' application for disability benefits. Id., p. 137. The is nothing to indicate that Kliment's senior staff knew of the asserted basis for disability.

THEREFORE, the Motion to Quash Plaintiff's Subpoena (d/e 203) filed by non-party witness Dusty Rhodes is ALLOWED.

IT IS THEREFORE SO ORDERED.

ENTER: April 1, 2009

FOR THE COURT:

*s/ Byron G. Cudmore*

BYRON G. CUDMORE
UNITED STATE MAGISTRATE JUDGE