IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| **RICKEY B. DAVIS,** ) | |
|     **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 04-3168 |
| ) | (and consolidated |
| ) | case No. 07-3096) |
| **CITY OF SPRINGFIELD, ILLINOIS,** ) | |
| **A Municipal Corporation,** ) | |
| ) | |
|     **Defendant.** ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTIONS IN LIMINE**

Defendant, by and through their attorneys, Jenifer L. Johnson, Corporation Counsel, and Frank Martinez, Assistant Corporation Counsel, hereby respond to Plaintiff's Motions in Limine as follows:

**1. Evidence of Favorable Treatment by Non-Decision Makers**

The Plaintiff anticipates that the Defendant will attempt to introduce evidence to try to show that other officials, in particular prior Police Chiefs, did not mistreat the Plaintiff or other black officers and, in fact, treated the Plaintiff and other black officer favorably in promotion or other employment decisions. It is unknown what type of information that the Plaintiff is speaking about since this assertion is vague and non-specific. Regardless, the Defendant certainly should be allowed to introduce evidence or testimony about how Kliment and Rouse helped the Plaintiff during his career to refute the allegation of retaliatory conduct or motive towards the Plaintiff. Without this testimony the jury will not have the benefit of knowing that Rouse and Kliment worked not only to help the Plaintiff but other minority officers as well during their

1

career which can be used to combat the allegation of retaliatory conduct on the part of these individuals.  The Plaintiff's reliance on *Staub v. Proctor Hospital*, 560 F.3d 647, 658 (7th Cir. 2008) is misplaced.   In *Staub*, the Court was concerned with evidence of animus by non-decisionmakers being prejudicial because of "the jury tendency to associate the nondecisionmaker's with the employer fairly or not."  This is not the case here.  Non-decisionmakers are not being used to raise an inference of animus.

### 2. Investigative Report of the Illinois State Police

The Plaintiff states he is not pursuing any claim based upon the investigative report of the Illinois State Police dated June 28, 2006, and the Illinois State Police Internal Affairs Investigation should be excluded from evidence.  The Defendant is not seeking to introduce the entire Illinois State Police Internal Affairs Investigation, but may seek to introduce portions of the report that are relevant to the time that the Plaintiff was in Criminal Investigations.   The Illinois State Police Investigative Summary indicates from November 1, 2004, through January 1, 2006, the Plaintiff "failed to follow the procedures set forth in the General Orders regarding the documentation and payment of Confidential Sources.  During the course of the investigation it was determined that the MCU [Major Case Unit] did not document Confidential Sources or obtain receipts from Confidential Sources when officers paid for information.  During Lieutenant Rickey Davis' administrative interview, Lieutenant Davis falsely stated the MCU documented Confidential Sources and followed Springfield Police General Order OPS-35 "to the letter."  Lieutenant

Rickey Davis failed to take reasonable measures to ensure the MCU notified the Narcotics unit of drug information and discontinued conducting "trash pull" to obtain search warrants for firearms as directed by Chief of Police Donald W. Kliment.  Lieutenant Rickey Davis further allowed Detectives Paul Carpenter, and James Graham to investigate and obtain an arrest warrant for a suspected burglary to a church in Rochester which is not in the SPD jurisdiction. Lieutenant Davis failed to supervise Springfield Police detectives Paul Carpenter and James Graham in such a manner as to detect, avoid or correct errors, or incidents of unsatisfactory performance or neglect of duty. Lieutenant Davis further failed to ensure discipline, enforcement of rules and regulations, general orders, and other Department or division level directives. Lieutenant Davis' actions were in violation of SPD General Orders ROC-02, Addendum 2, Rule 5, Rule 6, Rule 9, and Rule 33."  (See City Exhibit No. 1, filed under seal).

This information is relevant to refute allegations that Rouse and Kliment took retaliatory action against the Plaintiff after he was denied a promotion to Deputy Chief of Criminal Investigation in October 2003.  It also bolsters the decision to transfer the Plaintiff from the Criminal Investigations Division to Field Operations and the disciplinary actions taken against the Plaintiff. Specifically, Ronald Vose told Kliment in 2005 that the Major Case detectives were not following the Department policy on confidential informants.  (Kliment Dep. 85:6-23 and City Exhibit No. 2, filed under seal).  Kliment then had Rouse follow up on Vose's allegation and Rouse confirmed that what Vose told him

was true.  (Kliment Dep. 86:9-23; 87:1-23; 88:1-6; 89:21-23; 90:1-23; 91:1-10). Kliment held the detectives, sergeants and the lieutenants responsible for failing to follow the General Order regarding Confidential Sources.  (Kliment Dep. 93:2-10).

This type of conduct was also the basis for disciplinary action against other white Lieutenants such as Lt. Doug Williamson and Lt. Dave Dodson. This is important because the Plaintiff argues that he received disciplinary actions against him but Dodson and other white lieutenants never received a written reprimand like the Plaintiff.  This demonstrates that the Defendant treated white lieutenants the same as the Plaintiff who all worked in the Criminal Investigations Division.  Furthermore, the Plaintiff gave a detailed interview to Illinois State Police investigators on January 1, 2006, regarding his job duties in Criminal Investigation from November 2004 to January 2006 that was transcribed and can be used for impeachment purposes.

### 3. Extramarital Affair

The Defendant has no objection to this request as long as the Plaintiff does not open the door to such evidence such as testimony about the affairs of other Springfield Police Department employees or surveillance on the Plaintiff to determine his whereabouts while on-duty.  If the Plaintiff broaches these subjects, then his extramarital affair will be mentioned and testimony from his former lover will be sought.

### 4. Conversation Between Davis and Kliment about a Racial Slur

4

The Plaintiff referred to African-Americans by calling them the n-word on several occasions when responding to calls for service. (Kliment Dep. (6/16/05) 189:9-21). The Plaintiff was not explaining why some African-Americans used the n-word to refer to each other without any racial animus. This evidence is relevant to show that the Plaintiff himself is racist because he referred to other African-Americans by using the n-word and it also shows his lack of credibility in bringing about his retaliatory claims.

**5. Evidence of Caldwell's Evaluation of Plaintiff's Job Performance**

The Plaintiff seeks to prohibit evidence about the Plaintiff's job performance from Police Chief Ralph Caldwell. Caldwell's observations and personal knowledge of the Plaintiff's job performance is relevant to the claims made by the Plaintiff. Caldwell testified that when he gave out assignments that the Plaintiff could not be found and this occurred on a daily basis. (Caldwell Dep. 84:22-23; 85:1-22; 86:13-23; 87:1-3). Furthermore, Caldwell testified that once the Plaintiff filed his lawsuit it was almost like he was trying to get fired. *Id.* The Plaintiff was lazy either on purpose or because his nature changed. *Id.* Caldwell thought the Plaintiff was trying to get fired because he was not participating. (Caldwell Dep. 88:22-23; 89:1-16). Specifically, during task force meetings for Project Safe Neighborhood where Criminal Investigations usually ran those meetings, the Plaintiff did not participate. *Id.* In addition, former Lieutenant Dave Dodson came in on any Major Case callouts while on call and he stayed when the first detective got there and he left when the last detective got there. *Id.* The Plaintiff showed up, usually after

the whole investigative team was there and the Plaintiff left early and this would occur on a regular basis. *Id.* These observations by Caldwell bolster Donald Kliment reasons for not choosing the Plaintiff as Deputy Chief of Investigations because the Plaintiff had a poor work ethic and lacked managerial skills.

Caldwell further testified that it seemed that the Plaintiff was in a continual game of trying to get fired and that both Police Chief Kliment and John Harris talked about it. (Caldwell Dep. 146:13-23; 147:1-23; 148:1-23; 149:1-23). Caldwell testified that the Plaintiff was now all of sudden tying up everybody's hands, disappearing and not doing his job. *Id.* Caldwell observed when Davis hired Courtney Cox then all of a sudden everything changed and Davis disappeared and locked down and became lazy. (Caldwell Dep. 150:1-14).

These observations continued when Kliment became Police Chief and thereafter. Caldwell observed that it appeared that the Plaintiff was trying to get fired or bolster his case. It appeared to Caldwell that the Plaintiff wanted to be disciplined and/or get fired so that it would help his case so he could prove that the Springfield Police Department was discriminating against African-Americans. (Caldwell Dep. 153:23; 154:1-12). This evidence demonstrates that the Plaintiff not only stopped performing but appeared to do so in order to be disciplined or fired.

### 6. Jury Verdict Against Davis in the First Discrimination Trial

The jury should be allowed to hear that the City did not discriminate against the Plaintiff due to the lack of his promotion to become Deputy Chief of Investigations. The verdict about the lack of discriminatory intent could be used by the jury to infer that the City or Rouse or Kliment had no retaliatory motive against the Plaintiff. This is especially important where the Plaintiff will be showing a series of alleged incidents to infer retaliatory conduct on the part of the City.

### 7. Transcripts of Interviews of Police Officers Contained in an Internal Affair Investigative Report

Neither party should be allowed to use transcripts of Internal Affairs interviews in lieu of live testimony. The Plaintiff states that "[t]he written interviews [transcripts] of the police officers contained in the internal affairs investigative report, whether pro or con Lieutenant Davis, should be excluded from trial." The Defendant is not planning on introducing transcripts taken from Internal Affairs interviews. Regardless, the Plaintiff should not be allowed to use the transcripts of interviews in lieu of live testimony. As the Plaintiff has pointed out these transcripts are hearsay and prejudicial to both parties by putting undue emphasis on transcripts without the ability of the jury to judge the credibility of the witnesses who testified before Internal Affairs. Furthermore, the interviews were not taken under oath and all the individuals interviewed are available to testify.

Even if otherwise admissible, the prejudice of discussing or introducing investigative interviews into evidence outweighs any probative value, which would result in confusion to the jury and undue delay. (See F.R.E., Rule 403);

7

*Linsday v. Ortho Pharmaceutical Corp.*, 637 F.2d 87 (2nd 1980)(report excluded because of danger of unfair prejudice); *Gentile v. County of Suffolk*, 129 F.R.D. 435, 460 (E.D.N.Y. 1990) *aff'd*, 926 F.2d 142 (2nd Cir. 1991). See also *United States v. MacDonald*, 688 F.2d 224 (4th Cir. 1982)(exclusion of report upheld because of potential jury confusion), cert. denied, 459 U.S. 1013 (1983).

### 8. Evidence Regarding a Psychological Test

The Plaintiff seeks to exclude the Minnesota Personality Inventory-2 (MMPI-2) examination. (See City Exhibit No. 3, filed under seal). The results of the examination are quite relevant to show that the Plaintiff was exaggerating his responds to questions. This draws into question the reasonableness of his response to questions and his situation. It is appropriate for a jury to determine the extent of alleged psychological condition and whether the Plaintiff is fabricating his symptoms based on his responses to the MMPI-2. The Profile Validity portion of the examination states "[t]he client answered the MMPI-2 items in such a way as to invalidate the test. He answered an unusually large number of extreme items in the deviant direction; and indiscriminate and exaggerated response pattern is probable." When Dr. Sarma was asked if the Plaintiff could be exaggerating his symptoms he stated that conscious distortion or faking was a possibility. (Sarma Dep. 80:17-23; 81:1-10). Under the Persecutory Ideas (Koss-Butcher Critical Items) on page 12 of the report, the Plaintiff answered true to question 162 that "[s]omeone has been trying to poison me," and question 228, "[t]here are persons who are trying to steal my thoughts and ideas." *Id*. The Plaintiff failed to make a follow-

up appointment to retake the MMPI after being asked to by Dr. Sarma on October 13, 2006. (Sarma Dep. 81:4-24; 82:1-24; 83:1-12 and City Exhibit No. 4, filed under seal). Dr. Sarma indicated that the Plaintiff understood the MMPI-2 test and Sarma explained the test to the Plaintiff. (Sarma Dep. 84:1-14; 100:9-24). More importantly, the Plaintiff ended his medical treatment after he was told that he had to retake the MMPI-2 test when he failed to show up for his next appointment on December 11, 2006, indicating he was only being treated to bolster the allegations in his lawsuit until adverse information came to light. (Sarma Dep. 100:9-24; 101:1-20 and City Exhibit No. 4). The jury could infer the Plaintiff's actions of not retaking the MMPI-2 and ending his treatment as evidence that the Plaintiff was engaging in conscious distortion or faking.

Dr. Narasumhula Sarma is not designated as an expert by the Plaintiff nor did the Defendant need to retain an expert to interpret the MMPI-2 when a jury can draw its own inferences to determine whether the Plaintiff's responses indicate an indiscriminate and exaggerated response pattern and if this was the reason that he ended treatment abruptly.

**WHEREFORE**, the Defendant respectfully request that the Plaintiff's Motions in Limine be denied and any other relief that the court deems appropriate.

                              **RESPECTFULLY SUBMITTED,**
                              **CITY OF SPRINGFIELD, ILLINOIS.**

                              _____
                              **s/ Frank Martinez**
                              **Assistant Corporation Counsel**

**Jenifer L. Johnson**
**Corporation Counsel**
**Frank Martinez**
**Assistant Corporation Counsel**
**Room 313, Municipal Center East**
**800 East Monroe Street**
**Springfield, Illinois 62701-1680**
**Telephone: (217) 789-2393**
**Fax Number: (217) 789-2397**

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | |
|---|---|
| **RICKEY B. DAVIS,** | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 04-3168 |
| | ) |
| **CITY OF SPRINGFIELD, ILLINOIS,** | ) |
| A Municipal Corporation, | ) |
| | ) |
| Defendant. | ) |

**CERTIFICATE OF SERVICE**

    I hereby certify that on August 20, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: **Mary Anne Sedey and Donna Harper** and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants: **N/A**

                                  **s/Frank Martinez**
                                  Bar Number 6225562
                                  Attorney for Defendant
                                  City of Springfield
                                  Room 313 Municipal Center East
                                  800 East Monroe Street
                                  Springfield, Illinois 62701-1689
                                  Telephone:  (217) 789-2393
                                  Fax:         (217) 789-2397
                                  Email:     corporationcounsel@cwlp.com