E-FILED
Friday, 20 November, 2009  08:40:37 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| RICKEY DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-3168 |
| | ) | (and consolidated |
| CITY OF SPRINGFIELD, | ) | Case No. 07-3096) |
| | ) | |
| Defendant. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter came before the Court on October 15, 2009, for a bench trial of Plaintiff Rickey Davis' claim for equitable economic remedies for the City's retaliation against him in violation of Title VII of the Civil Rights Act of 1964 (Title VII). 42 U.S.C. § 2000e. Plaintiff Davis appeared in person and with his counsel Mary Anne Sedey and Donna L. Harper. Defendant City of Springfield appeared by Assistant Corporation Counsels Frank Martinez and Angela Fyans. The liability portion of Davis' retaliation claim was tried before a jury beginning on September 1, 2009. On September 10, 2009, the jury found the City liable for retaliation in violation of Title VII and awarded $350,000.00 in damages for emotional distress. This amount

1

will be reduced to the statutory cap of $300,000.00. 42 U.S.C. § 1981a. Davis also seeks equitable economic remedies for lost compensation and benefits. Such remedies are properly for the Court to determine under Title VII. See e.g., Alexander v. City of Milwaukee, 474 F.3d 437, 439 (7th Cir. 2007). The following constitutes findings of fact and conclusions of law for this portion of the trial. Fed. R. Civ. P. 52.

## FINDINGS OF FACT

On March 6, 2006, Davis was a Lieutenant in the City's Police Department (Department). On that date Davis went on medical leave due to depression. The jury found that the City was liable for subjecting Davis to emotional distress by retaliating against him for engaging in protected activity under Title VII. For purposes of this bench trial, this Court must accept the jury's findings. See Franzen v. Ellis Corp., 543 F.3d 420, 428 (7th Cir. 2008) ("Under the doctrine of issue preclusion or direct estoppel, a district court may not re-decide factual issues already necessarily determined by a jury."). Based on those findings, the Court finds that Davis went on medical leave because of the emotional distress caused by the wrongful retaliation. Davis remained on medical leave throughout the rest of 2006. Davis' doctor stated that he would be able to return to work on

2

March 5, 2007. Davis, however, retired from the Department on January 3, 2007. Davis' annual salary on the date of retirement was $82,158.18. Plaintiff's Exhibit 5, Application for Retirement.[1] His biweekly gross pay was $3,159.92 and his hourly rate was $42.13. See Plaintiff's Exhibit 6, Springfield Police Department Lieutenants and Deputy Chiefs Wages and Fringes, at 2.

Davis used all of his accrued compensatory time, personal time, vacation time, and sick time during his medical leave (collectively Accrued Time). Through the use of his Accrued Time, Davis received his full salary from March 6, 2006, until November 4, 2006. Plaintiff's Exhibit 8, Daily Transaction History for Rickey Davis; Plaintiff's Exhibit 10, Email from Lynette Withers dated September 6, 2006, re Rickey Davis. Thereafter, he was on unpaid leave until his retirement. Forty-three weeks and three days passed from March 6, 2006, until January 3, 2007. Davis' gross salary for that period would have totaled $68,886.26 if he had worked for that period. Davis, however, only received full salary for the 35 weeks from March 6,

---

[1] The exhibits references are to exhibits admitted at the October 15, 2009, bench trial.

3

2006, to November 4, 2006, or $55,298.60, while on his medical leave.[2]
Thus, Davis lost wages totaling $13,588.00.[3]

Upon retirement, Davis would have been entitled to receive a lump sum payment for all accrued and unused vacation and compensatory time and one-half of the accrued sick time at his final rate of pay on his retirement date. Transcript of Proceedings on October 15, 2009 (Case No. 07-3096 d/e 26) (Transcript), at 66 (testimony of Terrance Tranquilli).[4] He would have received no compensation for unused personal time at retirement.

Davis testified that, in the past, he had taken vacations and sick leave although he was attempting to accumulate this time. Thus, the evidence

---

[2]Plaintiff submitted a demonstrative exhibit which stated that Davis was on medical leave for 42 weeks and three days instead of 43 weeks and three days. The Court has reviewed the calendar for 2006 and 2007 and determines that its calculations are correct. The demonstrative exhibit also contained calculations stating that 42 weeks' salary was $66,358.32, and three days' salary was $947.93. The exhibit then contained an erroneous calculation that $66,358.32 + $947.93 = $70,466.17. Plaintiff's Exhibit 7. These two numbers total $67,306.25, not $70,466.17. Regardless, the Court finds that its calculations are supported by the evidence rather than those on the Plaintiff's demonstrative exhibit.

[3]The final calculations in this Opinion are rounded to the nearest dollar.

[4]The Court consolidated Case Nos. 04-3168 and 07-3096, and directed that all subsequent filing should be made in Case No. 04-3168. Text Order entered in Case No. 07-3096 on April 25, 2008. The Clerk, however, docketed the transcript of the October 15, 2009, hearing in Case No. 07-3096.

4

supports the finding that he would have taken at least a week of vacation and a week of sick leave if he had been able to remain at work until his date of retirement. If Davis had not used his remaining accrued vacation and sick time during his medical leave, he would have received a lump sum payment of $8,357.00 in accrued vacation pay and $17,297.00 for accumulated sick pay. See Plaintiff's Memorandum in Support of His Request for Economic Relief (d/e 304) (Plaintiff's Memorandum), at 4 n. 2.[5] He also would have received a lump sum payment of $758.00 for the 18 hours of compensatory time used during his medical leave.[6] Davis, however, did not receive any such payments because he had used all of his Accrued Time during his medical leave. The retention of the Accrued Time until retirement, however, would not have affected the calculation of his retirement benefits. Transcript, at 66 (testimony of Terrance Tranquilli).

Davis submitted evidence that the interest rate used by the Internal

---

[5]As summarized in footnote 2 of Plaintiff's Memorandum, Davis used: (1) 20.5 vacation days, plus an additional 82.14 hours of vacation during his medical leave, and (2) 114.5 sick days. After subtracting five vacation days and five sick days for the time he would have used if he had remained at work to retirement, Davis would have received a lump sum payment at retirement for: (1) 15.5 vacation days, plus 82.14 hours of vacation; and (2) one-half of 109.5 sick days. His daily rate of pay was $315.92, and his hourly rate of pay was $42.13. The lump sum payments are calculated as follows: (15.5 x 315.92) + (82.14 x 42.13) = $8,357.31; (109.5 x 315.92)/2 = $17,296.62.

[6]18 hrs x $42.13 per hour = $758.34.

5

Revenue Service (IRS) for overpayments and underpayments in 2006 and 2007 ranged from 6.00 percent to 9.00 percent.  <u>Plaintiff's Exhibit 9, Revenue Ruling 2009-27, Section 6621 - Determination of Rate of Interest, attached final summary page</u>. The Court takes judicial notice that the prime rate reported by the Wall Street Journal was 8.25 percent on January 3, 2007, and was 3.25 percent on the date of trial, October 15, 2009.

## CONCLUSIONS OF LAW

Davis is entitled to an economic remedy for lost compensation and benefits, or back pay, that will put him in the position that he would have been if not for the City's unlawful retaliation.  <u>Bruno v. City of Crown Point, Ind.</u>, 950 F.2d 355, 360 (7th Cir. 1991).  In this case, Davis suffered depression as a result of the retaliation and, thereby, lost compensation during the time of his unpaid medical leave from November 4, 2006, until his retirement date on January 3, 2007.  In addition, Davis lost the lump sum payments that he otherwise would have received at retirement had he not used his Accrued Time during his medical leave.  Because the City's retaliation caused Davis to lose work, and as a result, compensation and benefits, he is entitled to recover those sums.  <u>Townsend v. Indiana University</u>, 995 F.2d 691, 693 (7th Cir. 1993).

The City argues that Davis should be barred from asserting a claim for damages for back pay from March 6, 2006, to January 3, 2007, because Davis did not disclose a claim for back pay in his Rule 26 disclosure or any supplement to those disclosures. Davis's original Rule 26 disclosure did not reference back pay for the period from March 6, 2006, to January 3, 2007, as an element of damage. This disclosure, therefore, was not complete. Davis was obligated to supplement his Rule 26 disclosure if: (1) he learned that the disclosures were incomplete or incorrect, and (2) the additional or corrective information had not otherwise been made known to the City during the discovery process. Fed. R. Civ. P. 26(e)(1)(A).

In this case, the additional information on which Davis relied for his claim came from documents provided by the City in discovery and from the deposition testimony of witnesses designated by the City under Rule 30(b)(6) to testify regarding pensions and police compensation. See Plaintiff's Exhibits 5, 6, 8 and 10 cited above, and Exhibit 11, Plaintiff's Designation of Deposition Testimony of Scott Kincaid and Terrance Tranquilli. Thus, all of this information on which Davis relies came from the City and was disclosed in the discovery process. Since the information was adequately disclosed in the discovery process, Davis was not obligated

7

to provide an additional supplemental Rule 26 disclosure. Davis, therefore, is not barred from asserting this claim for back pay.

The City also cites the case of Brooms v. Regal Tube Co. for the proposition that a Title VII plaintiff may only receive back pay if he was discharged. Brooms, 881 F.2d 412, 423 (7th Cir. 1989) overruled in part on other grounds, Saxton v. American Tel. & Tel. Co., 10 F.3d 526, 533 n. 12 (7th Cir. 1993). The Court of Appeals decided Townsend after Brooms. The Townsend opinion is therefore controlling on this issue. Back pay may be awarded if the plaintiff lost wages due to the defendant's violation of Title VII even if the plaintiff was not discharged. Townsend, 995 F.2d at 693. That occurred here. Davis is entitled to a back pay remedy.

The City attempts to distinguish Townsend on the facts; however, the jury found the City liable for retaliation, and further, awarded $350,000.00 as compensation for his emotional distress. It is clear that the jury believed that the City's wrongful conduct caused Davis to suffer from depression. The Court must accept the jury's factual findings. Franzen, 543 F.3d at 428. That depression forced him onto medical leave. The City approved the leave, and so, acknowledged that Davis could not work during this period. Plaintiff's Exhibits 1-4, City Approvals of Davis Leave Requests.

Thus, the Court finds that the City's retaliation caused Davis to go on medical leave and, ultimately, to lose: (1) salary from November 4, 2006, to January 3, 2009, and (2) the lump sum payments that he otherwise would have received at retirement. These total $40,000.00.[7] The Court, therefore, awards Davis this sum as an equitable remedy for lost compensation and benefits due to the City's violation of Title VII.[8]

Davis argues that the back pay award should extend to the date that Davis' physician stated that he could return to work, March 5, 2007. The Court disagrees. The award of back pay is an equitable remedy to compensate Davis for salary and benefits that he lost because of the retaliation. Davis voluntarily severed his employment relationship with the City when he retired on January 3, 2007. The City had no employment relationship with Davis after that date. The termination of the employment relationship on that date was due to Davis' decision to retire, not the City's

---

[7]The sum of $13,588.00 (lost salary) + $8,357.00 (lost vacation lump sum payment) + $17,297.00 (lost sick leave lump sum payment) + $758.00 (lost compensatory time payment) = $40,000.00 in total lost compensation and benefits.

[8]The City also makes a reference to Davis' duty to mitigate damages by seeking other employment. In this case, Davis lost wages because of the medical leave he took due to his emotional distress and depression caused by the City's retaliation. The City approved all of his medical leave. Plaintiff's Exhibits 1-4. Thus, the City agreed that Davis was unable to work at this time. Davis' duty to mitigate, therefore, is not an issue.

prior retaliatory conduct. Since Davis voluntarily ended his employment relationship on that date, his claim for back pay ended as well.

Davis also seeks prejudgment interest on his back pay claim. The City concedes that prejudgment interest is appropriate on an award of economic remedies. Defendant's Opposition to Plaintiff's Memorandum in support of his Request for Economic Relief (d/e 305), at 6. See Fritcher v. Health Care Service Corp., 301 F.3d 811, 820 (7th Cir. 2002). The calculation of the amount of prejudgment interest is within the discretion of the Court. Fritcher, 301 F.3d at 820. Davis proposes a 7 percent interest rate compounded annually. Plaintiff's Memorandum in Support of His Request for Economic Relief, at 7. Davis relies on the range of interest rates used by the IRS for overpayments and underpayments. The City proposes the current prime rate of 3.25 percent. The relevant authority supports using the prime rate as a reference point to set a fixed rate of compound interest in situations, such as this one, when the interest rate is not set by contract or statute. American Nat. Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Systems, Inc., 325 F.3d 924, 938 (7th Cir. 2003); Fritcher, 301 F.3d at 820. The appropriate prime rate, however, would be the rate on January 3, 2007, when the loss was fixed. On January 3, 2007,

the prime rate was 8.25 percent, more than the rate proposed by Davis. In light of that fact, the Court finds, in its discretion, that Davis' proposed 7 percent rate is reasonable. The Court will award prejudgment interest on the back pay award of $40,000.00, at a rate of 7 percent interest, compounded annually from January 3, 2007, to the date of judgment. The interest so accrued and compounded from January 3, 2007, to November 20, 2009, is $8,623.00.[9] Thereafter, interest would accrue at a per diem rate of $8.78 to the date of judgment.

THEREFORE, the Court hereby enters judgment in favor of Plaintiff Rickey Davis and against Defendant City of Springfield, Illinois, on the jury verdict entered on September 10, 2009, and the findings of facts and conclusions of law set forth above, in the sum of $348,623.00, consisting of: (1) $300,000.00 in non-economic compensatory damages for emotional distress as awarded by the jury and subject to the statutory cap of 42 U.S.C.

---

[9]The interest on $40,000.00 at 7 percent from January 3, 2007, to January 2, 2008, was $2,800.00. The compounded principal on January 3, 2008, was $42,800.00 ($40,000.00 + $2,800.00). The interest on $42,800.00 at 7 percent from January 3, 2008, to January 2, 2009, was $2,996.00. The compounded principal on January 3, 2009, was $45,796.00 ($42,800.00 + $2,996.00). The per diem accrual of 7 percent interest on $45,796.00 is $8.78. Accrued interest from January 3, 2009, to November 20, 2009 (322 days) is $2,827.00. The total as of November 20, 2009, is $48,623.00, consisting of the original principal of $40,000.00 and accrued compound interest of $8,623.00

§ 1981a; (2) $40,000.00 in equitable economic remedies for back pay, lost compensation, and benefits; and (3) $8,623.00 in prejudgment interest on the economic remedy from January 3, 2007, to the date of judgment, November 20, 2009, plus costs. All pending motions are denied as moot.

IT IS THEREFORE SO ORDERED.

ENTER: November 20, 2009

    FOR THE COURT:

                                    s/ Jeanne E. Scott
                                JEANNE E. SCOTT
                      UNITED STATES DISTRICT JUDGE