IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| RICKEY B. DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-3168 |
| | ) | (Consolidated with |
| CITY OF SPRINGFIELD, | ) | Case No. 07-3096) |
| | ) | |
| Defendant. | ) | |

OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Defendant City of Springfield's (City) Motion for Judgment as a Matter of Law or in the Alternative a Motion for New Trial Under Federal Rule of Civil Procedure 59 (d/e 308). Plaintiff Rickey Davis, an African American man, was a Lieutenant in the City Police Department. Davis alleged that the City retaliated against him in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e. Davis alleged in Case No. 04-3168 that the City discriminated and retaliated against him in October 2003, by not promoting him to the position of Deputy Chief in charge of Criminal Investigations. This case had already been tried once. The jury in the first trial found in favor of the

1

City on the discrimination claim, but could not reach a verdict on the retaliation claim. Minute entry entered September 14, 2007; Jury Verdict (d/e 148). The retaliation claim was consolidated with the claims in Case No. 07-3096. Case No. 07-3096 Text Order entered April 25, 2008.

Davis alleged in Case No. 07-3096 that the City thereafter retaliated against him by: (1) interfering with his duties as Lieutenant in the Criminal Investigations Division; (2) giving him written counseling in December 2005; (3) issuing a reprimand in January 2006; (4) starting Internal Affairs investigations against him in February 2006; and (5) transferring him from Criminal Investigations to Field Operations in March 2006.

On September 1, 2009, a jury trial began on the remaining claims in these two consolidated cases. The claims in Case No. 04-3168 were referred to as Count I, and the claims in Case No. 07-3096 were referred to as Count II. On September 10, 2009, the jury returned verdicts in favor of the City on Count I and in favor of Davis on Count II. The jury awarded Davis $350,000 in damages for emotional distress caused by the retaliation alleged in Count II. Verdict Form on Count I (d/e 298); Verdict Form on Count II (d/e 299). The Court subsequently reduced the award to $300,000.00 due to the statutory cap. 42 U.S.C. § 1981a. The Court then conducted a

bench trial on Davis' economic claims and awarded $40,000.00 in back pay. Opinion entered November 20, 2009 (d/e 306).

The City now asks for judgment as a matter of law on Count II, or in the alternative, for a new trial. The Court will address each request separately. For the reasons set forth below, each request is DENIED.

I. MOTION FOR JUDGMENT AS A MATTER OF LAW

The Court must grant a motion for judgment as a matter of law if "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find in for the party on that issue." Fed. R. Civ. P. 50(a)(1). The Court must view all of the evidence in the record in the light most favorable to Davis. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). In this case, the issue is whether Davis presented enough evidence to permit a reasonable jury to conclude that he was a victim of illegal retaliation. See Filipovich v. K & R Express Sys. Inc., 391 F.3d 859, 863 (7th Cir. 2004).

In this case, Davis was required to present evidence that: (1) he engaged in protected activity; (2) he suffered a retaliatory adverse action; and (3) the retaliatory adverse action was motivated by his protected

3

activity. David v. Caterpillar, Inc., 324 F.3d 851, 858 (7th Cir. 2003). A retaliatory adverse action is an action that would dissuade a reasonable employee from making or supporting a charge of discrimination. Burlington Northern & Santa Fe R. Co. v. White, 548 U.S. 53, 68 (2006). A lateral transfer can constitute a retaliatory adverse action if the new position was objectively less desirable. Lucero v. Nettle Creek School Corp., 566 F.3d 720, 729 (7th Cir. 2009).

The City argues that Davis failed to present evidence that: (1) he suffered a retaliatory adverse action or (2) a causal connection existed between his protected activity and the retaliatory action. The evidence showed that Davis engaged in protected activity. He filed charges of discrimination; he filed Title VII lawsuits alleging discrimination and retaliation; and he spoke out about the City's treatment of African American police officers. The City, however, argues that the evidence did not show that Davis suffered a retaliatory adverse action.

Although the question is close in light of the Court of Appeals' recent decision in Lucero, the Court finds that Davis presented sufficient evidence of a retaliatory adverse action. In Lucero, a teacher, Lucero, claimed that the defendant school district retaliated against her by transferring her from

4

high school to junior high, with the same pay and benefits. The Court of Appeals determined that Lucero's subjective perception that teaching junior high was less prestigious was not relevant. Lucero, 566 F.3d at 729. The Court of Appeals explained that the retaliatory nature of the employer's actions must be determined on an objective standard; thus, a lateral transfer can constitute a retaliatory adverse action if the latter position is objectively less desirable than the former. Id. In Lucero, the transfer was not a retaliatory adverse action because Lucero taught the same academic subjects in the same building under the same conditions with the same pay and benefits. The latter position was not objectively less desirable. Id.

In this case, the jury found that the City subjected Davis to unwarranted disciplinary actions and transferred him from the day shift in Criminal Investigations to the midnight shift in Field Operations. After the transfer, he remained a Lieutenant with the same pay and benefits. Davis presented evidence that he and other officers perceived Criminal Investigations to be more prestigious than Field Operations, but those subjective perceptions are irrelevant. Id. Still, a jury could conclude that the assignment to Field Operations was objectively less desirable. Davis was placed on the midnight shift, and his working conditions changed because

the Field Operations Division performed patrol functions. As a result, a Lieutenant in Field Operations would need to be on the street more in order to supervise patrol sergeants and officers. A jury could conclude that being out on the streets more during the midnight shift constituted objectively less desirable working conditions. In addition, the jury found that the City subjected Davis to unwarranted disciplinary actions. The combination of the disciplinary actions and the transfer to the midnight shift would support a finding that the City's actions subjected Davis to objectively less desirable working conditions.

The City also argues that Davis failed to present evidence of a causal connection between Davis' protected activity and the retaliatory adverse actions. However, Davis presented evidence that, in November 2003, Davis filed a charge of discrimination because then Police Chief Donald Kliment had selected Lieutenant William Rouse, a white man, over Davis to be Deputy Chief of Criminal Investigations. Davis presented evidence from which a jury could conclude that, thereafter, Rouse and Kliment were out to get Davis because he filed the charge of discrimination. Rouse almost immediately began keeping notes on his interactions with Davis. Beginning in 2004, Rouse repeatedly asked for Davis to be transferred out of Criminal

Investigations. Davis submitted into evidence numerous memoranda in which he documented acts by Rouse and Kliment that, according to Davis' testimony, interfered with his ability to perform his duties. Rouse and Kliment subjected Davis to various forms of discipline that Davis testified were all unwarranted. Ultimately, Rouse and Kliment subjected Davis to the unwarranted discipline and transfer that formed the basis of Count II. When viewed favorably to Davis, this evidence establishes a causal connection between Davis' protected activity and the City's retaliatory adverse actions. The City's request for judgment as a matter of law on Count II is, therefore, denied.

II.   MOTION FOR NEW TRIAL

The City raises several grounds for its request for a new trial. The Court should grant a motion for new trial only if the jury's verdict was against the manifest weight of the evidence or if some error was so prejudicial as to have denied the City a fair trial. Cefalu v. Village of Elk Grove, 211 F.3d 416, 424 (7th Cir. 2000); Perry v. Larson, 794 F.2d 279, 285 (7th Cir. 1986). After careful review, the Court finds no basis for ordering a new trial.

The City argues that the Court committed prejudicial error by denying

the City's oral motion for a mistrial during the opening statement of Davis' counsel. The denial of the request for a mistrial was proper for the reasons stated of record. Davis' counsel mentioned in her opening statement the settlement in the Renatta Frazier case. Frazier, an African American woman and former City police officer, brought a Title VII action that the City settled. Frazier v. Harris, Case No. 04-3071.[1] The Court promptly sustained the City's objection to the reference to the settlement and directed Davis' counsel not to go further into the matter. The reference did not so taint the trial as to warrant a mistrial at that point. The settlement was not mentioned either in any evidence or in closing arguments. The reference to the settlement was not so prejudicial as to warrant a new trial.

The City also argues that the Court committed prejudicial error by allowing Davis to present evidence of the circumstances surrounding the Frazier case. The Court disagrees. Davis was required as an element of his retaliation claims to present evidence that he had engaged in protected activity. Some of Davis' protected activity consisted of speaking out about Frazier's case. Davis was, thus, allowed to present some evidence about the

---

[1]Frazier's claim started as part of another lawsuit. Frazier v. Harris, Case. No. 03-3007. Frazier's claim was severed from the rest of the case when the City and Frazier settled. Case No. 04-3071 Minute Entry entered March 24, 2004.

nature of Frazier's case as background to explain his protected activity to the jury. This evidence was limited, and the Court gave limiting instructions about this evidence. There was no error.

The City claims that the Court's prior rulings on motions in limine before the first trial in Case No. 04-3168 precluded presenting any evidence about Frazier. The Court disagrees. The first trial only concerned claims surrounding the October 2003, decision to promote Rouse instead of Davis to the position to Deputy Sheriff, alleged in Case No. 04-3168. The theory of retaliation in that case did not concern Frazier. Davis claimed that Kliment retaliated against him in that case because Davis had advocated extending a promotion list for sergeants. Thus, the Frazier case was not relevant. This second trial concerned the subsequent retaliatory acts, in addition, as alleged in Case No. 07-3096. Davis claimed that the subsequent retaliation occurred as part of a pattern of retaliation that started in the fall of 2003 and continued until the transfer in March 2006. Davis claimed that the City engaged in this ongoing pattern of retaliation, in part, because of his support for Frazier. The evidence presented showed that Davis continued to support Frazier's then pending lawsuit after Rouse became Deputy Chief in the fall of 2003. The City and Frazier did not

settle her claims until the spring of 2004.  Frazier v. Harris, Case No. 04-3071 Order entered April 16, 2004 (granting stipulation to dismiss).  The circumstances of the Frazier case were, therefore, relevant in this trial.  The decisions on the motions in limine in the first trial were not controlling because those decisions did not concern the evidence to be presented on the claims in Case No. 07-3096.  There was no error.

The City also argues that the jury award of $350,000.00, reduced to $300,000.00, was excessive.  The Court reduced the award to $300,00.00 because of the statutory cap.  42 U.S.C. § 1981a.  Davis' evidence, which the jury believed, indicated Davis suffered from depression stemming from the City's conduct toward him.  Davis and his wife testified to the mental suffering that Davis endured due to his depression caused by the retaliation.  The City, itself, approved Davis' requests for medical leave based on depression.  There was ample evidence that Davis suffered from depression caused by the City's actions.  This evidence was sufficient to support the amount awarded by the jury.

Last, the City argues that the jury's verdict in favor of the City on Count I and against the City on Count II was inconsistent.  However, based on the evidence, the jury could have concluded that Kliment picked Rouse

over Davis to be Deputy Chief because there were problems within Criminal Investigations, and Kliment wanted someone outside of Criminal Investigations to come in as the supervisor. Davis was already in Criminal Investigations as a Lieutenant, but Rouse was not. Thereafter, however, Davis filed a charge of discrimination based on the promotion decision. The jury apparently determined that Rouse and Kliment then decided to retaliate against Davis for filing that charge. This interpretation of the events is reasonable and consistent with the evidence. As such, the jury's verdicts on Counts I and II were consistent. The request for a new trial is denied.

THEREFORE, Defendant City of Springfield's Motion for Judgment as a Matter of Law or in the Alternative a Motion for New Trial Under Federal Rule of Civil Procedure 59 (d/e 308) is DENIED.

IT IS THEREFORE SO ORDERED.

ENTER: December 9, 2009

FOR THE COURT:

s/ Jeanne E. Scott
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE